No. 2--05--0766                                          filed 6/2/06

_____

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

_____

| | | |
|---|---|---|
| THOMSON LEARNING, INC., | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 04--MR--1351 |
| | ) | |
| OLYMPIA PROPERTIES, LLC, | ) | Honorable |
| | ) | Bonnie M. Wheaton, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

_____

JUSTICE McLAREN delivered the opinion of the court:

In the present case, the trial court concluded that a lessee's partial compliance with the terms of an option to cancel a commercial lease was sufficient to exercise that option. Having so concluded, the trial court granted summary judgment for plaintiff, Thomson Learning, Inc. (Tenant). Defendant, Olympia Properties, LLC (Landlord), appeals that decision. We reverse and remand.

I. BACKGROUND

The facts are somewhat involved. Tenant leased space in a Naperville office building pursuant to a lease that granted Tenant an option to cancel prior to the lease's scheduled end in December 2009 (Cancellation Option). Specifically, if Tenant exercised the Cancellation Option, the lease would end August 31, 2005. Under the terms of the Cancellation Option, Tenant had to do two things to exercise the option. First, Tenant had to pay a cancellation fee. Second, Tenant had to

give Landlord written notice of cancellation. The Cancellation Option required that Tenant do both

of these things by September 1, 2004. The Cancellation Option expressly stated that "time [was] of

the essence."

Tenant decided to take advantage of the Cancellation Option. To this end, in April 2004,

Tenant called Landlord and advised Landlord that Tenant was considering relocating. That June, in

an effort to convince Tenant to stay, Landlord offered new lease terms, under which, among other

things, Landlord said it would forgive payment of money Tenant already owed. In response, Tenant

asked Landlord to specify the amount of the cancellation fee. Landlord informed Tenant that it was

$1,136,475.[1]

---

[1]Under the terms of the Cancellation Option, the cancellation fee was equal to "the sum of (i)

$472, 620.54 and (ii) the unamortized portion as of August 31, 2005 of any construction allowance

and brokerage fees paid or provided by Landlord for" a certain type of space, if any, "leased by

Tenant after September 1, 1995."

A few days before the September 1 deadline for exercising the Cancellation Option, Tenant called Landlord and said that Tenant intended to exercise that option.[2] At the time, Tenant did not say that it had already sent written notice of its intent. However, Tenant did request instructions for paying the cancellation fee. Landlord provided those instructions, and the cancellation fee was wired to Landlord. The next day, August 31, Landlord confirmed receipt of the cancellation fee. But, according to Landlord, it received no written notice of cancellation by the September 1 deadline for exercising the Cancellation Option.

On September 9, 2004, just over a week after that deadline had passed, Landlord notified Tenant that, although Landlord had received the cancellation fee, Landlord had not received written notice of cancellation. Because, under the terms of the Cancellation Option, Tenant had been required to provide such notice by September 1, Landlord told Tenant that the Cancellation Option

---

[2]In the "Statement of Facts" section of its appellate brief, Tenant repeatedly refers to the "fact" that it "exercised" the Cancellation Option. But Tenant's exercise of the Cancellation Option is not a fact. On the contrary, it is the very issue to be decided in this case. Under our supreme court rules, a party may not submit a statement of facts in which disputed issues are disguised as facts. See Official Reports Advance Sheet No. 21 (October 17, 2001), R. 341(e)(6), eff. October 1, 2001 (requiring that the facts in party's statement of facts be "stated accurately and fairly without argument"). Thus, we have ignored Tenant's statements that it exercised the Cancellation Option. See Hamilton v. Conley, 356 Ill. App. 3d 1048, 1052-53 (2005) (disregarding portions of statement of facts that failed to conform to supreme court rules). And we caution Tenant's counsel to adhere to our supreme court rules in the future.

had not been effectively exercised. Therefore, Landlord said the option had expired and the lease would continue. Landlord said it would return the cancellation fee that Tenant had wired.

Tenant called Landlord and said that Tenant had complied with the Cancellation Option. As to the written notice requirement, Tenant said that it had provided written notice about a week before it had called and asked for instructions regarding payment of the cancellation fee (although, during that call, Tenant had not mentioned that it had allegedly already sent written notice of cancellation). Tenant said that it had sent written notice by Federal Express on August 19. According to Tenant, during this call, it informed Landlord that the notice had been sent with a letter regarding a power outage that had occurred at the leased premises in July. But according to Landlord, Tenant said nothing during this call about sending notice along with a letter about a power outage.

A few days later, on September 13, Tenant sent a letter to Landlord, reiterating that Tenant had complied with the Cancellation Option. In support of its assertion, Tenant attached a copy of the written notice that Tenant alleged it had sent on August 19. That notice was dated August 16. Tenant also attached a copy of a Federal Express receipt that indicated that Landlord had received from Tenant a Federal Express envelope on August 20. The receipt did not say that a cancellation notice was in the envelope.

Landlord replied that the Federal Express envelope it received on August 20 had not contained written notice of cancellation. Instead, Landlord said, the envelope contained only the letter regarding the July power outage. Landlord said that it was "puzzled" when it received this letter, because the issues that the letter raised had been addressed weeks before Landlord received the letter. In any event, Landlord said the envelope had not contained notice of Tenant's intention to exercise the Cancellation Option. Therefore, Landlord reiterated that the Cancellation Option had not been effectively exercised by the September 1 deadline, that the lease would continue in effect

until its scheduled termination in 2009, and that Tenant was entitled to a refund of its cancellation fee. Landlord provided Tenant with that refund.

In response, Tenant insisted that it had provided written notice, which was received by Landlord on August 20. However, Tenant said, even if it had not provided written notice on August 20, it had done so on September 13 when it gave Landlord a copy of the notice that was allegedly sent earlier. Therefore, Tenant said, it had exercised the Cancellation Option. Tenant sent back to Landlord the cancellation fee that Landlord had refunded to Tenant. And Tenant said that it would treat as a default under the lease any further refusal by Landlord to accept Tenant's claim that it had exercised the Cancellation Option. Tenant said if litigation resulted it would seek to recover expenses and attorney fees from Landlord.

Shortly thereafter, Tenant sued Landlord. Tenant filed a complaint for declaratory judgment, seeking a determination that it had effectively exercised the Cancellation Option and that, per the terms of that option, the Lease would expire on August 31, 2005. Then, Tenant moved for summary judgment. In support of its motion, Tenant attached, among other things, affidavits and deposition transcripts in which Tenant's employees swore to Tenant's version of events. That is, they swore that written notice had been sent by Federal Express on August 19, that this notice had been sent along with the power outage letter, and that, after Landlord said that it had not received written notice at that time, Landlord was told that Tenant had sent the notice, along with the power outage letter. Tenant acknowledged, however, that Landlord denied receiving timely written notice of cancellation. Nevertheless, Tenant argued, notwithstanding that the Cancellation Option required that Tenant provide timely written notice, Tenant had exercised the Cancellation Option, because (1) Landlord knew that Tenant intended to exercise the Cancellation Option and (2) Tenant had paid a cancellation fee.

Alternatively, Tenant argued that, even if it had not legally exercised the Cancellation Option, Tenant was entitled to summary judgment based on equitable considerations. These considerations included (1) the fact that Landlord knew that Tenant intended to exercise the Cancellation Option and (2) the fact that Tenant had paid a cancellation fee. These considerations also included the fact that Landlord had admittedly received written notice two weeks after the time for exercising the Cancellation Option had passed and the fact that Landlord had not claimed any prejudice from this delay. These considerations did not include an allegation that Tenant would suffer any hardship if it were held to the terms of the Cancellation Option contained in the lease it had signed. In all events, Tenant argued, it was entitled to summary judgment.

In response, Landlord stated that Tenant had not sent Landlord timely written notice. In support of this assertion, Landlord attached, among other things, affidavits from its employees who swore to Landlord's version of events. That is, they swore that no notice of cancellation had been contained in the Federal Express envelope received on August 20 and that, when Tenant was informed that it had failed to timely comply with the written-notice requirement, Tenant did not say that it had sent written notice along with the power outage letter in the Federal Express envelope, although Tenant did say it had sent written notice in that envelope.

Landlord argued that, in light of this factual dispute, summary judgment was inappropriate. Specifically, Landlord argued that, under Illinois law, a Tenant seeking to exercise an option to extend or cancel a commercial lease must strictly comply with the terms of that option. Landlord argued that, if, as Landlord claimed, Tenant had not provided timely written notice, then Tenant had not strictly complied with the terms of the Cancellation Option. Thus, Landlord argued that Tenant was not entitled to summary judgment on legal grounds. Moreover, Landlord argued that Tenant was not entitled to summary judgment on equitable grounds either. In the first place, Landlord said,

the doctrine of unclean hands barred equitable relief. This was because, according to Landlord, Tenant had made up the story about sending timely written notice. Therefore, Landlord said, Tenant was acting in bad faith and lying to both Landlord and the court. In the second place, Landlord argued that, unclean hands aside, Tenant had not established sufficient "special circumstances" to entitle Tenant to equitable relief. In all events, Landlord argued, Tenant was not entitled to summary judgment.

In reply, Tenant reiterated that, legally, it had complied with the Cancellation Option. Moreover, Tenant reiterated that, even if it had not, it was entitled to summary judgment on equitable grounds. With regard to Landlord's assertion that Tenant had lied about sending timely written notice, and that, as a result, the doctrine of unclean hands barred equitable relief, Tenant stated only:

> "[Landlord] seeks to draw [Tenant] into a credibility battle by accusing [Tenant's] witnesses of lying, and suggesting that [Tenant] has been 'waylaid by a conspiracy of mendacious property managers.' [Tenant] will not, however, enter that fray because it is irrelevant and obviously designed to avoid the only issue before the Court."

The trial court granted Tenant's motion for summary judgment. In doing so, the court stated that it would assume that, if the case went to trial, Tenant's witnesses would testify that Tenant had timely mailed written notice, and Landlord's witnesses would testify that Landlord had not received timely written notice. That is, the court recognized a factual dispute on the issue of timely written notice. The court further recognized that, under the terms of the Cancellation Option, Tenant was required to give timely written notice. Nevertheless, the court stated that it would grant the motion for summary judgment, because Landlord had "actual notice of the exercise" of the Cancellation Option and because Landlord had received the cancellation fee. Thus, because the Cancellation

Option required timely written notice, the court implicitly rejected Landlord's argument that strict compliance was required to effectively exercise an option to extend or cancel a commercial lease. Having concluded that "actual notice" was legally sufficient to comply with the Cancellation Option, the court did not reach Tenant's alternative argument that Tenant was entitled to judgment based on equitable grounds. Because it did not reach the equitable claim, the court did not reach Landlord's affirmative defense to that claim, that the doctrine of unclean hands prohibited equitable relief. Landlord timely appeals.

## II. DISCUSSION

We begin with the standard of review. *Summary judgment is appropriate only if the pleadings, depositions, admissions, and affidavits on file establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.* General Casualty Insurance Co. v. Lacey, 199 Ill. 2d 281, 284 2002 Duncan v. Peterson, 359 Ill. App. 3d 1034, 1043 2005 . *Because summary judgment is a drastic means of disposing of litigation, a court must exercise extraordinary diligence in reviewing the record so as not to preempt a party s right to fully present the factual basis for its claim.* Northern Illinois Emergency Physicians v. Landau, Omahana Kopka, Ltd., 216 Ill. 2d 294, 305-06 2005 see also Somoye v. Klein, 349 Ill. App. 3d 209, 212 2004 , quoting Bier v. Leanna Lakeside Property Ass n, 305 Ill. App. 3d 45, 50 1999 noting that s ummary judgment is a drastic means of resolving litigation . *In ruling on a motion for summary judgment, the court must construe the evidence liberally in favor of the nonmoving party and strictly against the moving party.* Chatham Foot Specialists, P.C. v. Health Care Service Corp., 216 Ill. 2d 366, 376 2005 Crestview Builders, Inc. v. Noggle Family Ltd. Partnership, 352 Ill. App. 3d 1182, 1184 2004 . *Summary judgment should be granted only if the right of the moving party is clear and free from doubt.* Morris v. Margulis, 197 Ill. 2d 28, 35 2001 Kurczak v. Cornwell,

359 Ill. App. 3d 1051, 1059 2005 . We review de novo the trial court s decision on a motion for summary judgment. Big Sky Excavating, Inc. v. Illinois Bell Telephone Co., 217 Ill. 2d 221, 234 2005 Buffa v. Haideri, 362 Ill. App. 3d 532, 537 2005 .

Here, Tenant raises two alternative bases for summary judgment. First, Tenant argues that, although the Cancellation Option required timely written notice, and although there was a factual dispute as to whether Tenant had provided timely written notice, Tenant exercised the Cancellation Option. Second, Tenant argues that, even if it did not exercise the Cancellation Option, it is entitled to summary judgment on equitable grounds. We take these points in turn.

Tenant first argues that it exercised the Cancellation Option. As noted, the Cancellation Option required Tenant to (1) give written notice of cancellation; and (2) pay a cancellation fee. Additionally, the Cancellation Option required that Tenant do both of these things by September 1, 2004. And the Cancellation Option stated that time was of the essence. Tenant acknowledges that there is a dispute as to whether Tenant gave written notice by September 1. Tenant also acknowledges that, for purposes of summary judgment, we must assume that Tenant failed to give written notice by September 1. See Krautsack v. Anderson, 329 Ill. App. 3d 666, 674 2002 In ruling on a motion for summary judgment, the court should not resolve disputed factual matters . Nevertheless, Tenant argues that, because it paid the cancellation fee by September 1, and because Landlord actually knew by that date that Tenant intended to exercise the Cancellation Option, Tenant effectively exercised that option.

The problem with this argument is that it assumes that something less than strict compliance with the terms of an option to cancel or extend a commercial lease is sufficient to exercise that option. It is not. On the contrary, for more than 100 years, Illinois courts have held that a lessee

seeking to exercise an option to cancel or extend a commercial lease must strictly comply with the terms of that option. See, e.g., Dikeman v. Sunday Creek Coal Co., 184 Ill. 546, 551 (1900) *stating that an agreement must be complied with as made*; T.C.T. Building Partnership v. Tandy Corp., 323 Ill. App. 3d 114, 119-20 (2001) (stating that *a lease provision that requires a lessee to give written notice of its intent to extend the lease is subject to the rule of strict compliance*); MXL Industries, Inc. v. Mulder, 252 Ill. App. 3d 18, 28 (1993) (*stating that the doctrine of substantial performance has no application to an option to cancel a commercial lease for a term of years and because plaintiff conceded that it did not literally or strictly comply with the option requirements, the option was not effectively exercised*; La Salle National Bank v. Graham, 119 Ill. App. 3d 85, 86 (1983) *stating that an option to renew or extend a lease must be exercised in accordance with the agreement of the parties*; see also Suckle v. United States Shoe Corp., No. 88--C--974 (N.D. Ill. 1988), slip op. at ___ (applying Illinois law) *stating that under Illinois law, an option to renew or extend a lease must be exercised in strict accordance with the parties agreement*. The same is true in other jurisdictions. See, e.g., Andrews v. Blake, 205 Ariz. 236, 243, 69 P.3d 7, 14 (Ariz. 2003) *stating that Arizona courts have strictly construed options in lease agreements because such provisions allow the optionee freedom to exercise or not exercise the option, whereas the optionor is bound by the option*; Dyer v. Ryder Student Transportation Services, Inc., 765 A.2d 858, 860 R.I. 2001 *stating that to effectively exercise an option to renew, the tenant must strictly comply with the notice provisions of the option* Utah Coal & Lumber Restaurant, Inc. v. Outdoor Endeavors Unlimited, 40 P.3d 581, 583 (Utah 2001) *stating that in order to exercise an option to renew a lease, a lessee must strictly comply with the terms of the lease s option renewal provisions*. Commentators, too, recognize this requirement. See, e.g., 2 M. Freedman, Friedman on Leases §21:1, at 1312 (4th ed. 1997) ("Tenant's notice of election *** to cancel ha[s] been held a condition precedent, with which strict compliance is required"); W. Farber, Residential Tenancies: Termination, Modification, and Renewal, 2 Illinois Real Property

§13:10, at ___ (West 2006) ("tenant[s] must strictly comply with [lease] renewal provisions. The tenant must accordingly give notice at the time and in the manner specified in the lease").

Here, to strictly comply with the Cancellation Option, Tenant was required to give Landlord written notice by September 1. The record reflects an issue of material fact that precludes a determination that Tenant gave such notice. Thus, Tenant has not established strict compliance with the Cancellation Option, and, consequently, Tenant's exercise of that option has not been established for purposes of granting summary judgment.

In an effort to get around this conclusion, Tenant relies on cases that do not involve a lessee's attempt to exercise an option to cancel or extend a commercial lease. Specifically, Tenant relies on cases involving: curtailment of electricity under a contract with an electric company (Bloom Township High School v. Illinois Commerce Comm'n, 309 Ill. App. 3d 163 (1999)); an attorney approval clause in a residential real estate sales contract (Denis F. McKenna Co. v. Smith, 302 Ill. App. 3d 28 (1998)); a mortgage contingency in a residential real estate sales contract (Rogers v. Balsley, 240 Ill. App. 3d 1005 (1993)); a lessee's default for failure to comply with lease provisions regarding parking and signage (Vole, Inc. v. Georgacopoulos, 181 Ill. App. 3d 1012 (1989)); and breach of a franchise agreement (Dunkin' Donuts, Inc. v. Towns Family, Inc., No. 95--C--3666, slip op. at ___ (N.D. Ill. 1995)). As Tenant points out, in each of these cases there was a question of whether notice that did not strictly adhere to contractual requirements was nevertheless sufficient. In each of these cases the court held that, because the notice apprised the party to be notified, it was sufficient. See Bloom Township High School, 309 Ill. App. 3d at 180; Denis F. McKenna Co., 302 Ill. App. 3d at 33; Rogers, 240 Ill. App. 3d at 1011; Vole, 181 Ill. App. 3d at 1019; Dunkin' Donuts, No. 95--C--3666, slip op. at ___. But Tenant does not explain how these holdings permit us to set aside more than 100 years of Illinois law on the issue at hand, that is, the exercise of an option to

renew or cancel a commercial lease. Nor does Tenant explain how these cases permit us to ignore the precedent of our supreme court (Dikeman, 184 Ill. at 550-51), to say nothing of our own precedent (MXL Industries, 252 Ill. App. 3d at 28). Certainly none of the cases Tenant cites is precedential. Indeed, they do not involve options to renew or cancel a commercial lease. Tenant's reliance on these cases is therefore wholly misplaced.

In addition to being required by precedent, the rule of strict compliance makes sense based on both fairness and the realities of commercial transactions. First, as to fairness, a lessee that receives from a lessor an option to extend or cancel a commercial lease receives something of great value. A. Arnold J. O Neill, Option to Renew, Extend, or Cancel Lease, I Real Estate Leasing Practice Manual §3 I, at West 2006 From the viewpoint of the lessee, an option to renew is a valuable right . For example, in the case of an option to extend, a commercial lessee can avoid costs associated with moving, including the need to refurnish the new premises, pay moving costs, print new stationery, and incur a variety of other expenses." A. Arnold J. O Neill, Option to Renew, Extend, or Cancel Lease, I Real Estate Leasing Practice Manual §3 I, at West 2006 . In the case of an option to cancel, the lessee can avoid the adverse effects of a downturn in local economic conditions. In the case of either an option to cancel or one to extend, the lessor generally receives no consideration for agreeing to be bound by the lessee's exercise of that option. See Linn Corp. v. LaSalle National Bank, 98 Ill. App. 3d 480, 483 (1981). Therefore, at the very least, the lessor ought to be able to demand that, when the parties have agreed on how the option will be exercised, the lessee will be held to that agreement.

Second, as to the realities of commercial transactions, the rule of strict compliance is consistent with the fact that the parties to commercial leases tend to be sophisticated business people. See MXL Industries, 252 Ill. App. 3d at 28; J. Glen, Options to Renew Commercial Leases

*Should N.Y. Join the Majority?*, 4 N.Y. L.J. __, __ 2006. Unlike the courts, the parties are well versed in the needs of their business. When that business involves leasing commercial space, and the lessor gives the lessee an option to cancel the lease, the lessor may reasonably decide that it wants that option to be exercised in writing, if it is to be exercised at all. The lessor may insist on this because it believes that a writing promotes certainty, which may be particularly important to the lessor in light of the money it may have to spend to find a new tenant. Along the same lines, the lessor may insist on a writing in the case of an option to renew, because, if the lessee exercises that option, the lessor must forgo other opportunities to lease the space. A. Arnold J. O Neill, *Option to Renew, Extend, or Cancel Lease*, 1 Real Estate Leasing Practice Manual §31, at __ (West 2006) (An option to renew deprives the lessor of the power to choose another lessee in place of the present one. In either case, if the lessee feels that a writing requirement is too onerous, the lessee is free to negotiate a different arrangement. But when the lessee agrees to the writing requirement and then fails to live up to it, the lessee should not be permitted to demand that the law protect the lessee from its failure to comply with the contract it negotiated. As one commentator recently explained:

> Whether or not to grant a commercial tenant a right to extend or cancel a lease, and under what terms, is generally the product of hard bargaining and careful drafting. In a volatile real estate market, the length of the lease term, and the right to extend or cancel it, is often the single most important economic aspect of the commercial tenancy negotiation. To relieve parties of their obligations in this area, while occasionally appealing, is disruptive to legitimate commercial expectations. J. Glen, *Options to Renew Commercial Leases*, 4 N.Y. L.J. at __.
>
> We recognized as much not too long ago in MXL Industries. In that case, the plaintiff lessee and the defendant lessor entered in a commercial lease, which granted the plaintiff the option to cancel the lease prior

to its scheduled termination. *MXL Industries*, 252 Ill. App. 3d at 20-21. To exercise the option, the plaintiff had to pay all sums then due under the lease, as well as an additional sum equal to four months rent. Instead of strictly complying with these requirements, the plaintiff paid only some of the money the defendant claimed it was owed, and the plaintiff also demanded that the defendant sign a release. *MXL Industries*, 252 Ill. App. 3d at 21. The defendant said the plaintiff had failed to effectively exercise the option, and litigation ensued. In those proceedings, the plaintiff claimed that it had substantially complied with the option requirements, and, therefore, that it had effectively exercised the option. *MXL Industries*, 252 Ill. App. 3d at 25. We disagreed. We held that, in order to effectively exercise an option to cancel a commercial lease, a lessee must strictly comply with the terms of that option. See *MXL Industries*, 252 Ill. App. 3d at 28. We recognized that, although strict compliance might at first blush seem a harsh rule, the requirement has great value in promoting security in commercial transactions, and it is particularly appropriate where both parties are commercially sophisticated, the option benefits only the lessee, and there is no claim of unfair dealing. We stated

> Because plaintiff s argument necessarily concedes that it did not literally or strictly comply with the option requirements, we must conclude that the option was not effectively exercised. While we recognize that a rule of strict compliance might lead to harsh results, such a rule tends to enforce commercial certainty. Citation. Moreover, the parties here are sophisticated business people, the right to cancel was for the plaintiff s sole benefit, and there was no evidence in the record to suggest that the option language resulted from overreaching or an unfair inequality in bargaining power. *MXL Industries*, 252 Ill. App. 3d at 28.

Here, again, we are faced with an option to cancel a commercial lease. Both parties are sophisticated business entities, the option was for Tenant s sole benefit, and there is no evidence of unfair dealing. Thus, we

conclude that Tenant was required to strictly comply with that option and that there is an issue of material fact as to such compliance.

Tenant attempts to undermine the relevance of *MXL Industries* by factually distinguishing that case from the present one. Tenant correctly argues that, unlike the present case, *MXL Industries* did not involve the issue of notice. But *MXL Industries* did involve the issue of compliance with the terms of an option to cancel a commercial lease. And it held that what is required is strict compliance. See *MXL Industries*, 252 Ill. App. 3d at 28. Moreover, based on the reasoning discussed above, it had a commercially sound reason for doing so. Tenant offers no reason why the requirement of strict compliance should apply with less force when the option contains a notice provision. Nor do we think such a conclusion would be consistent with the host of Illinois cases requiring strict compliance with the notice provision of an option to extend a commercial lease. See, e.g., *Dikeman*, 184 Ill. at 550-51 *Graham*, 119 Ill. App. 3d at 86.

One of these option-to-extend cases is particularly persuasive here. In *Graham*, the defendant lessee and the plaintiff lessor entered into a commercial lease, which contained an option to extend. To exercise the option, the lessee was required to give written notice to the lessor six months prior to the end of the then-current lease term. *Graham*, 119 Ill. App. 3d at 86. The lessee gave the lessor timely oral notice of its intent to exercise the option, but failed to give timely written notice. The court noted the long-standing rule of strict compliance and found the lessee s attempt to exercise the option ineffective. *Graham*, 119 Ill. App. 3d at 87. Likewise, in the present case, Tenant gave Landlord timely oral notice of its intent to exercise the Cancellation Option, but failed to establish that it gave timely written notice for purposes of summary judgment. Thus, here, as in *Graham*, Tenant failed to establish strict compliance with the Cancellation Option. Consequently, Tenant s attempt to exercise that option was not effective.[3]

_____

[3]Tenant attempts to distinguish Graham on the ground that there, unlike here, the lessor disputed receiving timely oral notice. However, because Graham involved a motion for summary

*To sum up, well-settled Illinois law requires that a lessee seeking to exercise an option to extend or cancel a commercial lease strictly comply with the terms of that option. This requirement is consistent with the approach taken in other jurisdictions, as well as the views of commentators. Here, the Cancellation Option*

judgment filed by the lessor, the court necessarily assumed for purposes of its decision that the lessee had provided timely oral notice. See <u>Graham</u>, 119 Ill. App. 3d at 86 (noting that "it is undisputed that the [lessee] did not notify the [lessor] <u>in writing</u>" by the option deadline) (emphasis added); see also <u>Majca v. Beekil</u>, 183 Ill. 2d 407, 416 (1998) (noting that, for purposes of summary judgment, court would "assume the truth of all well-pleaded factual allegations"). Thus, Tenant has pointed out a distinction without a difference.

required that written notice be given by a certain date, and Tenant conceded, for purposes of summary judgment, that it did not provide written notice by that date. In other words, Tenant conceded that it did not strictly comply with the Cancellation Option. Accordingly, Tenant failed to effectively exercise that option.

Tenant next argues that its failure to exercise the Cancellation Option should be excused on equitable grounds. As noted, the trial court did not reach Tenant's equitable argument. However, we may affirm on any ground called for by the record, regardless of whether the trial court relied on that ground. *Haupt v. Sharkey*, 358 Ill. App. 3d 212, 219 (2005). We have reviewed the equitable argument to determine if we may affirm on this basis, and we determine that we may not. This is so for two important reasons.

First, Tenant has failed to plead sufficient facts from which we could determine that Tenant is entitled to equitable relief. To be entitled to equitable relief, a lessee that fails to strictly comply with an option to cancel or extend a commercial lease must at a minimum establish (1) the delay in strictly complying was slight, (2) the lessee would suffer undue hardship if strict compliance were not excused, and (3) the lessor would not suffer prejudice if strict compliance were excused. 1 A. Corbin, Corbin on Contracts §2.15, at 203 (J. Perillo ed. 1993). Here, Tenant alleges in support of its equitable argument that (1) the delay, if any, in sending written notice was slight, (2) Tenant timely paid the cancellation fee, (3) Landlord had "actual notice" of Tenant's decision to exercise the Cancellation Option, and (4) Landlord suffered no prejudice as a result of the delay, if any. As to Landlord's "actual notice," this is irrelevant; it is just another way of highlighting Tenant's failure to strictly comply with the Cancellation Option. The same is true of Tenant's timely payment of the cancellation fee, that is, Tenant's timely compliance with only one of the two requirements of the Cancellation Option. Finally, and most importantly, once we cut through the irrelevant facts that Tenant has alleged, we see that Tenant has failed to allege one of the elements necessary to establish that it is entitled to equitable relief.

Specifically, Tenant has failed to allege undue hardship.[4]  Second, even if Tenant were to allege sufficient facts to entitle it to equitable relief, Tenant would not necessarily be entitled to equitable relief in this case.  This is because Tenant has not yet even attempted to defeat Landlord's affirmative defense of unclean hands.  The doctrine of unclean hands bars equitable relief when the party seeking that relief is guilty of misconduct in connection with the subject matter of the litigation.  Wolfram Partnership, Ltd. v. LaSalle National Bank, 328 Ill. App. 3d 207, 221-22 (2001).  For the doctrine to apply, the party's misconduct must

_____

[4]Courts and commentators are split over whether equity can relieve the lessee from negligently failing to strictly comply with a lease option or whether equity may step in only in case of fraud, estoppel, nonnegligent mistake, or nonnegligent accident.  Compare Andrews, 205 Ariz. at 247, 69 P.3d at 18 (finding that equity will not relieve mere negligence), and Utah Coal & Lumber Restaurant, 40 P.3d at 584 (same), with Aickin v. Ocean View Investments Co., Inc., 84 Haw. 447, 455, 935 P.2d 992, 1000 (1997) (finding that equity will relieve mere negligence), and Fleming Companies, Inc. v. Equitable Life Insurance Co. of Iowa, 16 Kan. App. 2d 77, 87, 818 P.2d 813, 820 (1991) (same); compare L. Sharp, Untimely Exercise of Option Under Commercial Lease May Not Always Be Fatal, 47-Mar. Advoc. 21, 22 (____) (supporting excusing negligence), with J. Glen, Options to Renew Commercial Leases, 4 N.Y. L.J. at ____ (opposing excusing negligence).  Illinois has allowed equity to excuse negligence (see, e.g., Providence Insurance Co. v. La Salle National Bank, 118 Ill. App. 3d 720, 723 (1983); Ceres Terminals, Inc. v. Chicago City Bank & Trust Co., 117 Ill. App. 3d 399, 402 (1983)).  However, even if Tenant establishes undue hardship, Tenant has not yet explained the reason for its failure to strictly comply with the written notice requirement.  Therefore, we make no further comment as to whether that failure, if negligent, would be subject to equitable relief.

rise to the level of fraud or bad faith. *Beitner v. Marzahl*, 354 Ill. App. 3d 142, 150 2004 . The doctrine is intended to prevent a party from taking advantage of its own wrong. *Regnery v. Meyers*, 345 Ill. App. 3d 678, 685 2003 . To determine whether a party acted with unclean hands, the court must look to the intent of that party. See *Schivarelli v. Chicago Transit Authority*, 355 Ill. App. 3d 93, 103 2005 .

Here, Landlord alleges that Tenant lied about sending timely written notice. In support of this assertion, Landlord points out that, when Tenant called Landlord to request instructions for paying the cancellation fee, Tenant did not mention having earlier sent written notice. Additionally, Landlord points out that, when Landlord informed Tenant that Landlord had not received written notice, Tenant did not tell Landlord that Tenant had sent written notice along with a power outage letter. Instead, Tenant said this only after Landlord informed Tenant that the Federal Express envelope received on August 20 contained the power outage letter. Finally, Landlord points out that it did not receive timely written notice. We must assume that these allegations are true for purposes of deciding Tenant's summary judgment motion. See Krautsack, 329 Ill. App. 3d at 676. Thus, Landlord concludes that Tenant lied about sending timely written notice. Consequently, Landlord argues, Tenant has acted with unclean hands and is not entitled to equitable relief.

Based on the particular circumstances of this case, the above factual allegations are sufficient to set out a claim of unclean hands. First, if Tenant lied about sending the written notice, Tenant clearly engaged in misconduct amounting to fraud or bad faith. *Beitner*, 354 Ill. App. 3d at 150. Second, because Tenant allegedly engaged in this misconduct in an attempt to establish that it had exercised the Cancellation Option, and because the exercise of that option is the very thing at issue in this case, Tenant s alleged misconduct is obviously related to the subject matter of the litigation. *Wolfram Partnership*, 328 Ill. App. 3d at 221-22. Third, although Tenant insists that no evidence supports Landlord s allegations, Tenant has never in fact denied

those allegations. Moreover, as this case comes to us at the summary judgment stage, it is hard to imagine what other evidence Landlord could produce to support its allegations. Surely, to survive summary judgment, Landlord is not required to provide an affidavit from one of Tenant's employees admitting that he or she fabricated, or worked with others who fabricated, the written notice story. See Northern Illinois Emergency Physicians, 216 Ill. 2d at 306 (noting that, "at the summary judgment stage, nonmoving parties" are not required to prove their cases").

It is possible that neither Landlord nor Tenant is correct here. It is possible that written notice was never sent, but that Tenant honestly believes that it was. It is possible that Tenant made a mistake and that Tenant never intended to deceive Landlord. But as we have repeatedly pointed out, matters of intent are generally inappropriate for resolution at the summary judgment stage. See, e.g., Farmers Automobile Insurance Ass'n v. Williams, 321 Ill. App. 3d 310, 314 (2001), quoting Raprager v. Allstate Insurance Co., 183 Ill. App. 3d 847, 859 (1989) (noting that "summary judgment is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions"); Rumford v. Countrywide Funding Corp., 287 Ill. App. 3d 330, 335 (1997), quoting Giannetti v. Angiuli, 263 Ill. App. 3d 305, 313 (1994) (noting that "summary judgment is particularly inappropriate where *** the parties seek to draw inferences on questions of intent"); Lynge v. Kunstmann, 94 Ill. App. 3d 689, 694 (1981) (noting that "it has been held that questions of intent are particularly inappropriate for summary judgment"). Here, a trier of fact could reasonably infer that Tenant's hands are unclean. Thus, even if Tenant could properly allege grounds for equitable relief, we believe Landlord's affirmative defense of unclean hands is sufficient to raise an issue of material fact and preclude summary judgment on equitable grounds.

In summation the entry of summary judgment was error. There were and are issues of material fact regarding whether Tenant is entitled to judgment in either law or equity.

## III. CONCLUSION

For the reasons stated, the judgment of the circuit court of Du Page County is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

GROMETER, P.J., and KAPALA, J., concur.