# Illinois Official Reports

## Appellate Court

---

**In re Estate of Lewy, 2018 IL App (1st) 172552**

---

| | |
|---|---|
| Appellate Court Caption | *In re* ESTATE OF ALICE LEWY, Deceased (Lisa Dudley, Claimant-Appellant, v. FNBC Bank and Trust, as Independent Administrator of the Estate of Alice Lewy, Deceased, Respondent-Appellee). |
| District & No. | First District, Fourth Division<br>Docket No. 1-17-2552 |
| Filed | September 28, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 17-P-00905; the Hon. Mary Ellen Coghlan, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Christopher Berghoff, of Berghoff & Berghoff, Ltd., and Nicholas P. Hoeft, of Jostock & Jostock, P.C., both of Chicago, for appellant.<br><br>Eric Dorkin, MacKenzie A. Hyde, Angelo DiBartolomeo, and Ashley Coppola, of Clark Hill PLC, of Chicago, for appellee. |
| Panel | PRESIDING JUSTICE McBRIDE delivered the judgment of the court, with opinion.<br>Justice Burke concurred in the judgment and opinion.<br>Justice Gordon specially concurred, with opinion. |

¶ 1    Is a person who has been convicted of misdemeanor battery of an 88-year-old disabled woman prevented by the elder abuse and neglect provision of the Probate Act of 1975 (Act) (755 ILCS 5/2-6.2(b) (West 2014)) from subsequently seeking *quantum meruit* compensation from the woman's estate for caretaking services? The trial court ruled that the statute barred Lisa Dudley's claim for compensation from the estate of Alice Lewy, because Dudley—who had been charged with committing felony criminal neglect of an elderly person, felony aggravated domestic battery, felony assault with battery of a senior citizen, and misdemeanor battery against Lewy in her home—entered into a guilty plea agreement as to the misdemeanor battery charge. See 720 ILCS 5/12-3(a)(1) (West 2014) (battery). On appeal, Dudley contends the trial court erred when the phrase "by reason of the death" limits the scope of the statute to claims *that arise* by reason of the abused person's death, *e.g.*, the claims of heirs and surviving joint tenants, but that Dudley's *quantum meruit* claim was not triggered by Lewy's death and could have been filed during Lewy's lifetime. See 755 ILCS 5/2-6.2(b) (West 2014). We need not resolve the merits of Dudley's argument, however. Although misdemeanor battery of an elderly or disabled person is egregious, it is not an offense that falls within the scope of the current Act. See 755 ILCS 5/2-6.2(b) (West 2014). Consequently, it was error to dismiss Dudley's compensation claim on the basis of the statute.

¶ 2    We have jurisdiction pursuant to Illinois Supreme Court Rule 304(b)(1) (eff. Mar. 8, 2016). The trial court entered a final and appealable order on June 6, 2017, by dismissing Dudley's claim with prejudice; the trial court denied Dudley's motion to reconsider on September 14, 2017, and Dudley filed her notice of appeal within 30 days on October 12, 2017.

¶ 3    According to Dudley, she became friends with Lewy and Lewy's husband after meeting them in a McDonald's restaurant in Skokie in 1991 when Dudley was in her early thirties and Lewy was in her mid-sixties. In her claim against Lewy's estate, Dudley alleged that, in 2009, around the time that Lewy's husband died, Dudley became Lewy's caretaker, housekeeper, cleaner, driver, and personal assistant. Dudley alleged that she helped Lewy on a full-time basis for the next seven years because Lewy asked for her assistance and that, although Lewy paid her "infrequently" and "little" at the time, Lewy promised to bequeath "handsome[ ] compensation" and "substantial sums."

¶ 4    The physical altercation at issue occurred in Lewy's home at 4840 Foster Street, No. 1, Skokie, Illinois, 60077, on November 22, 2015. The record includes a partial transcript of a preliminary hearing conducted on December 15, 2015, during which Lewy was called as one of the witnesses for the prosecution, demonstrated memory loss and confusion, and had no recollection of the altercation. After other witnesses testified, Dudley pled guilty and was convicted of misdemeanor battery in violation of section 12-3(a)(1) of the Criminal Code of 2012 (720 ILCS 5/12-3(a)(1) (West 2014)). The criminal division judge sentenced Dudley to a term of two years' conditional discharge, ordered her to avoid unlawful conduct with Lewy, and prohibited Dudley from providing caregiving services.

¶ 5    The record also includes a probate division order entered in April 2016, appointing the Cook County Public Guardian as the temporary guardian of Lewy's person and estate. The probate court judge found the guardianship was necessary for the immediate welfare and protection of her person and assets. Specifically, Lewy had been diagnosed with mild to moderate dementia and stomach cancer and had been physically abused by Dudley. Also,

although Dudley had been ordered not to provide caregiving services, she was observed in Lewy's home during a subsequent visit by the Public Guardian's office and was known to have transported Lewy to visit attorneys. In addition, a friend who had Lewy's health care power of attorney had resigned "due to the difficulty with caregiver Dudley." The order also indicates Lewy's last surviving sibling, Richard Huspek, was residing with Lewy, that Lewy was responsible for his healthcare and coordination of his caregivers and daily insulin injections, that Lewy's physician opined Lewy was not capable of continuing to act in a decision-making capacity for her brother, and that the Public Guardian's office was also petitioning for Huspek's guardianship.

¶ 6     Within less than a year of the guardianship order, Lewy died intestate on January 20, 2017, leaving her brother as the sole heir of her $1.2 million estate.

¶ 7     Dudley filed claims of fraudulent inducement and breach of contract to make a will favoring her. She also sought $1.226 million from the estate in *quantum meruit* compensation for caregiving services she rendered at the rate of $40 per hour for 12 hours every day between 2009 and 2015.[1]

¶ 8     FNBC Bank and Trust, as independent administrator of Lewy's estate, filed a combined motion to dismiss with prejudice pursuant to section 2-619.1 of the Code of Civil Procedure, arguing in part that, in light of subsection (b) of the Act, Dudley's criminal conviction affirmatively barred her claim against the estate. The Act states in relevant part:

> "Financial exploitation, abuse, or neglect of an elderly person or a person with a disability.
>
> (a) In this Section:
>
> 'Abuse' means any offense described in Section 12-21 or subsection (b) of Section 12-4.4a of the Criminal Code of 1961 or the Criminal Code of 2012.
>
> 'Financial exploitation' means any offense or act described or defined in Section 16-1.3 or 17-56 of the Criminal Code of 1961 or the Criminal Code of 2012, and, in the context of civil proceedings, the taking, use, or other misappropriation of the assets or resources of an elderly person or a person with a disability contrary to law, including, but not limited to, misappropriation of assets or resources by undue influence, breach of a fiduciary relationship, fraud, deception, extortion, and conversion.
>
> 'Neglect' means any offense described in Section 12-19 or subsection (a) of Section 12-4.4a of the Criminal Code of 1961 or the Criminal Code of 2012.
>
> (b) Persons convicted of financial exploitation, abuse, or neglect of an elderly person or a person with a disability or persons who have been found by a preponderance of the evidence to be civilly liable for financial exploitation shall not receive any property, benefit, or other interest by reason of the death of that elderly person or person with a disability, whether as heir, legatee, beneficiary, survivor, appointee, claimant under Section 18-1.1, or in any other capacity and whether the property, benefit, or other interest passes pursuant to any form of title registration,

---

[1]According to the estate, Huspek died shortly after Lewy, and Dudley filed claims against his estate of breach of contract to make a will and *quantum meruit*. However, the Public Guardian opposed the claims, and the trial court dismissed them. There is no indication that Dudley appealed.

testamentary or nontestamentary instrument, intestacy, renunciation, or any other circumstance." 755 ILCS 5/2-6.2(b) (West 2014).

¶ 9 Dudley filed a response and an amended response to the administrator's dismissal motion, in which she argued she should be considered innocent, notwithstanding her conviction. Dudley attributed the criminal charges to unintentional injuries and law enforcement's erroneous assumptions about what had occurred. As to the conviction, Dudley said she "[r]eluctantly *** agreed to the plea deal based upon her attorney's counsel that doing so would legally have no adverse effect on her relationship with [Lewy]." Dudley contended it would be inequitable for the court to deny her "rightful compensation."

¶ 10 After written and oral arguments, the probate court judge granted the administrator's motion to dismiss. Dudley then retained a different attorney, filed a motion to reconsider in which she introduced the statutory argument she now makes on appeal, and proposed that she amend her pleading to bring only the *quantum meruit* count. The judge denied the motion, and in this ensuing appeal, Dudley has limited her arguments to her *quantum meruit* allegations. As indicated above, however, we find it unnecessary to reach her argument about the meaning of a certain phrase in the statute, because the statute concerns a felony form of abuse and does not apply to Dudley's misdemeanor conviction for battery of her elderly, disabled client.

¶ 11 Interpretation of a statute is a question of law that we address *de novo*. *People ex rel. Schad, Diamond & Shedden, P.C. v. My Pillow, Inc.*, 2018 IL 122487, ¶ 18. It is a primary rule of statutory construction that the intention of the legislature should be ascertained and given effect. *Founders Insurance Co. v. American Country Insurance Co.*, 366 Ill. App. 3d 64, 69, 851 N.E.2d 120 (2006). All other rules of statutory construction are subordinate to this principle. *Founders Insurance*, 366 Ill. App. 3d at 69; *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 387, 712 N.E.2d 298 (1998). When interpreting a statute, we look first to the terms of the statute and give the legislature's words their plain and ordinary meaning. *Founders Insurance*, 366 Ill. App. 3d at 69. It is never proper for a court to depart from plain statutory language by reading in conditions, exceptions, or limitations that conflict with the clearly expressed legislative intent. *Bridgestone/Firestone, Inc. v. Aldridge*, 179 Ill. 2d 141, 149, 688 N.E.2d 90 (1997). In addition, where a statute is derogation of the common law, it is to be strictly construed. *My Pillow*, 2018 IL 122487, ¶ 18. "Nothing is to be read into such statutes by intendment or implication. Even if a statute has remedial features, if it is in derogation of the common law, ' "it will be strictly construed when determining what persons come within its operation." ' " *My Pillow*, 2018 IL 122487, ¶ 18 (quoting *JPMorgan Chase Bank, N.A. v. Earth Foods, Inc.*, 238 Ill. 2d 455, 463, 939 N.E.2d 487 (2010), quoting *In re W.W.*, 97 Ill. 2d 53, 57, 454 N.E.2d 207 (1983)). Further, we are to read a statute as a whole, rather than construing operative words or phrases in isolation. *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 422, 781 N.E.2d 249 (2002) ("[w]ords and phrases should not be construed in isolation, but interpreted in light of other relevant portions of the statute so that, if possible, no term is rendered superfluous or meaningless").

¶ 12 The record reveals that the dismissal of Dudley's suit was in error, because although she was abusive toward Lewy, Dudley's misconduct did not fit within the legislature's limited definition of "Abuse" for purposes of the Act. See 755 ILCS 5/2-6.2 (West 2014). In subsection (a) of the elder abuse and neglect provision of the Act, the legislature defined "Abuse" (and "Financial exploitation" and "Neglect"), and in subsection (b), the legislature extinguished certain common-law rights to receive property, benefit, or other interests. 755

ILCS 5/2-6.2(a), (b) (West 2014). The legislature specified that " 'Abuse' means any offense described in Section 12-21 or subsection (b) of Section 12-4.4a of the Criminal Code of 1961 or the Criminal Code of 2012." 755 ILCS 5/2-6.2(b) (West 2014). Reading the plain language as written, the legislature intended to narrow the application of the Act to persons who have been convicted of a specific offense that is described and outlawed in one of the two specified criminal statutes. See 755 ILCS 5/2-6.2 (West 2014).

¶ 13    The first statute, section 12-21, was repealed by Public Act 96-1551, § 10 (eff. July 1, 2011), so we have looked directly to the second statute, section 12-4.4a(b), which prohibits the specific offense of "(b) Criminal abuse or neglect of an elderly person or person with a disability." 720 ILCS 5/12-4.4a(b) (West 2014). In section 12-4.4a(b) of the Criminal Code of 2012, the legislature described that offense as follows:

"(1) A caregiver commits criminal abuse or neglect of an elderly person or person with a disability when he or she knowingly does any of the following:

(A) performs acts that cause the person's life to be endangered, health to be injured, or pre-existing physical or mental condition to deteriorate;

(B) fails to perform acts that he or she knows or reasonably should know are necessary to maintain or preserve the life or health of the person, and that failure causes the person's life to be endangered, health to be injured, or pre-existing physical or mental condition to deteriorate;

(C) abandons the person;

(D) physically abuses, harasses, intimidates, or interferes with the personal liberty of the person; or

(E) exposes the person to willful deprivation.

(2) It is not a defense to criminal abuse or neglect of an elderly person or person with a disability that the caregiver reasonably believed that the victim was not an elderly person or person with a disability." 720 ILCS 5/12-4.4a(b) (West 2014).

¶ 14    The legislature also provided that this specific type of abuse is a felony offense:

"(d) Sentence.

***

(2) Caregiver. Criminal abuse or neglect of an elderly person or person with a disability is a Class 3 felony, unless it results in the person's death in which case it is a Class 2 felony, and if imprisonment is imposed it shall be for a minimum term of 3 years and a maximum term of 14 years." 720 ILCS 5/12-4.4a(d) (West 2014).

¶ 15    The administrator of Lewy's estate has indicated Dudley was charged with four crimes: "felony criminal neglect of an elderly person," "felony aggravated domestic battery," "felony assault with battery of a senior citizen," and "misdemeanor battery." The administrator has not disclosed statutory citations of the three felony charges that were lodged against Dudley, but it appears that the first charge coincides with section 12-4.4a(b)(1) (720 ILCS 5/12-4.4a(b)(1) (West 2014)). Nevertheless, it is undisputed that all three of the felony charges were dismissed due to a plea agreement. We know from Dudley's sentencing order entered on March 9, 2016 (an exhibit to the motion to dismiss Dudley's claim), that she was convicted of a single crime: a battery in violation of section 12-3(a)(1) (720 ILCS 5/12-3(a)(1) (West 2014)). In that statute, the legislature stated:

"(a) A person commits battery if he or she knowingly without legal justification by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual.

(b) Sentence.

Battery is a Class A misdemeanor." 720 ILCS 5/12-3 (West 2014).

¶ 16　　　We find no overlap in the language of the statute that prohibits "Criminal abuse or neglect of an elderly person or person with a disability" (720 ILCS 5/12-4.4a(b) (West 2014)) and the language of the statute that prohibits "Battery" (720 ILCS 5/12-3 (West 2014)). The Act expressly incorporated "any offense described in *** subsection (b) of section 12-4.4a of *** the Criminal Code of 2012" (755 ILCS 5/2-6.2(a) (West 2014)), which is "Criminal abuse or neglect of an elderly person or person with a disability" (720 ILCS 5/12-4.4a(b) (West 2014)), not the offense described in section 12-3, which is "Battery" (720 ILCS 5/12-3 (West 2014)). Statutory language itself is the best indication of legislative intent. *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill. 2d 429, 441-42, 593 N.E.2d 522 (1992) "Where a statute lists the things to which it refers, there is an inference that all omissions should be understood as exclusions, despite the lack of any negative words of limitation." *Burke*, 148 Ill. 2d at 442; *Bridgestone/Firestone, Inc.*, 179 Ill. 2d at 152 (*expressio unius est exclusio alterius* means the explicit mention of one thing is the exclusion of something else). The legislation provides that the elder abuse and neglect provision of the Act is triggered by a specific felony conviction or convictions for the mistreatment of an elderly person or person with a disability, not by a misdemeanor battery conviction, as the legislature did not include the offense of "Battery" in the statute.

¶ 17　　　Thus, while the trial judge's ruling reflects the spirit of the Act to address the appalling mistreatment of elderly or disabled individuals,[2] the plain language of the Act did not encompass Dudley's conviction for misdemeanor battery of her elderly client. The statute is in derogation of Dudley's common-law right to compensation from Lewy's estate, and we must adhere to the principle that when a statute is penal in nature, it is not to be extended by inference. *Acme Fireworks Corp. v. Bibb*, 6 Ill. 2d 112, 119, 126 N.E.2d 688 (1955); *My Pillow, Inc.*, 2018 IL 122487, ¶ 18 (statutes in derogation of the common law are to be strictly construed). Whether the statute should be broadened is a matter for the legislature. Because it is improper for a court to alter plain statutory language (*Bridgestone/Firestone, Inc.*, 179 Ill. 2d at 149), we reverse the trial judge's decision to dismiss Dudley's *quantum meruit* claim against

---

[2]According to the American Psychological Association, "[w]hen elder abuse happens, family, other household members, or paid caregivers are usually the abusers." Am. Psychological Ass'n, Elder Abuse and Neglect: In Search of Solutions 2 (2012), http://www.apa.org/pi/aging/resources/guides/elder-abuse.pdf (last visited Oct. 23, 2018) [https://perma.cc/6HB6-KD83]. According to the National Clearinghouse on Abuse in Later Life, "Older victims may be abused by intimate partners, adult children, grandchildren, or other family members, caregivers, or persons in positions of authority." Nat'l Clearinghouse on Abuse in Later Life, Rural Domestic and Sexual Abuse Program Advocates: Making a Difference in the Lives of Older Survivors of Abuse 6 (2013), http://www.ncall.us//FileStream.aspx?FileID=85 (last visited Oct. 23, 2018) [https://perma.cc/9E7Z-CWLQ]. In addition, "[a] 2010 study found that 47% of participants with dementia had been mistreated by their caregivers. Of them, 88.5% experienced psychological abuse, 19.7% experienced psychological abuse, and 29.5% experienced neglect." *What We Do*, Nat'l Ctr. on Elder Abuse, https://ncea.acl.gov/whatwedo/research/statistics.html (last visited Oct. 23, 2018) [https://perma.cc/B74T-BUEQ].

Lewy's estate on the basis of this statute, and we remand for further proceedings as to the claim.

¶ 18        Reversed and remanded.

¶ 19        JUSTICE GORDON, specially concurring:

¶ 20        I agree with the majority that the Act does not bar plaintiff's claim seeking *quantum meruit* compensation from the estate of Alice Lewy, deceased. However, I must write separately, as plaintiff may be barred from recovering under a *quantum meruit* claim under the doctrine of "unclean hands" because she acted in bad faith through her conduct toward the decedent in striking her. The doctrine of "unclean hands" precludes a party from taking advantage of its own wrong. *Long v. Kemper Life Insurance Co.*, 196 Ill. App. 3d 216, 218-19 (1990). It is an equitable doctrine that bars relief when the party seeking that relief is guilty of misconduct in connection with the subject matter of the litigation. *Thomson Learning, Inc. v. Olympia Properties, LLC*, 365 Ill. App. 3d 621, 634 (2006). The doctrine only applies when the party's misconduct rises to a level of fraud or bad faith. *Thomson*, 365 Ill. App. 3d at 634. The court must look to the intent of a party to determine whether it acted with "unclean hands." *Thomson*, 365 Ill. App. 3d at 634. The doctrine is only available when the misconduct was "toward the party against whom relief is sought and *** connected with the transaction at issue in the litigation." *Zahl v. Krupa*, 365 Ill. App. 3d 653, 658 (2006).

¶ 21        It would be up to the trial court to determine at trial whether plaintiff's conduct was of such a sufficiently serious nature so as to preclude the award of equitable relief. It would not be fair to award a caregiver money for taking care of an elderly person if that caregiver abused that elderly person. As a result, I would remand to the circuit court of Cook County with instructions to have a trial on the *quantum meruit* issue. See *Ellis v. Photo America Corp.*, 113 Ill. App. 3d 493 (1983).