# Illinois Official Reports

## Appellate Court

---

**Michigan Wacker Associates, LLC v. Casdan, Inc.**, 2018 IL App (1st) 171222

---

| | |
|---|---|
| Appellate Court Caption | MICHIGAN WACKER ASSOCIATES, LLC, Plaintiff and Counterdefendant-Appellant, v. CASDAN, INC., Defendant and Counterplaintiff-Appellee. |
| District & No. | First District, Third Division<br>Docket No. 1-17-1222 |
| Filed<br>Rehearing denied | February 28, 2018<br>March 30, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2016-CH-12105; the Hon. Anna H. Demacopoulos, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Lawrence M. Benjamin, of Neal, Gerber & Eisenberg, LLP, of Chicago, for appellant.<br><br>Robert P. Conlon, Robert P. Arnold, and Cassandra L. Jones, of Walker Wilcox Matousek, LLP, of Chicago, for appellee. |
| Panel | JUSTICE LAVIN delivered the judgment of the court, with opinion.<br>Presiding Justice Cobbs and Justice Fitzgerald Smith concurred in the judgment and opinion. |

**OPINION**

¶ 1    This dispute arises from a lease entered into between landlord Michigan Wacker Associates, LLC (landlord), and tenant Casdan, Inc. (tenant). Landlord maintains that tenant failed to exercise its option to extend the lease term while tenant asserts the opposite. Before the trial court, both parties sought declarations supporting their respective positions and filed cross-motions for summary judgment. The trial court entered judgment in favor of tenant, and landlord now appeals. For the following reasons, we reverse the trial court's judgment and remand for the court to enter judgment in favor of landlord.

¶ 2                                  I. Background
¶ 3                                  A. The Lease
¶ 4    In 2001, the parties entered into a lease for landlord's property located at 75 East Wacker Drive in Chicago.[1] Tenant was to operate a restaurant under the name Bella! Bacino's. The lease was to expire on December 31, 2011, but provided two options to extend the lease:

> "Tenant shall have the option to extend the term of this Lease for two additional five (5) year periods (the first five (5) year extension option shall hereinafter be referred to as the 'First Extension Option' and the second five (5) year extension option shall hereinafter be referred to as the 'Second Extension Option'). *** The option to renew shall be exercised with respect to the entire Demised Premises only and shall be exercisable by Tenant delivering the Extension Notice to Landlord, in the case of the First Extension Option, on or prior to January 1, 2011 and in the case of the Second Extension Option, on or prior to January 1, 2016, in all cases, time being of the essence."

Additionally, the parties would determine the rent amount for any extension by considering the fair market rent for comparable restaurants at that time. If the parties could not agree on such amount within 10 days of tenant's exercise of an option, either party could demand arbitration.

¶ 5    Article 27 of the lease governed notice:

> "Except as otherwise expressly provided in this Lease, any *** notices *** or other communications given or required to be given under this Lease *** shall be deemed sufficiently given or rendered only if in writing, *** sent by registered or certified mail (return receipt requested) addressed to Landlord at Landlord's address set forth in this Lease, with a copy to Masterworks Development Corporation, 56 West 45th Street, 4th Floor, New York, New York 10036, Attention: Jon D. Horowitz, Esq.; or *** to such other address as *** Landlord *** may designate as its new address for such purpose by notice given to the other in accordance with the provisions of this Article 27."

---

[1] Tenant's fact section is argumentative and at times inaccurate, in violation of Illinois Supreme Court Rule 341(h)(6) (eff. Nov. 1, 2017). While we decline to take any action here, we remind tenant that reviewing courts may strike an improper statement of facts or dismiss an appeal where warranted. *Szczesniak v. CJC Auto Parts, Inc.*, 2014 IL App (2d) 130636, ¶ 8.

Landlord's address was Michigan Wacker Associates, LLC, "c/o Masterworks Development Corporation at 555 Fifth Avenue, Suite 1400, New York, New York, 10017." We note that Masterworks Development Corporation (Masterworks) controlled landlord's operations.

¶ 6 The lease also contained two sections limiting landlord's ability to waive lease terms (collectively referred to as the no-waiver clause). In short, the lease provided that landlord could waive strict performance of a lease term only by executing a written instrument to that effect and, even then, waiver of one breach would not result in the waiver of subsequent breaches.

¶ 7 B. The Parties' Correspondence

¶ 8 On November 9, 2010, tenant, through attorney Harold Rosen, sent landlord a letter labeled, "Extension Notice for First Extension Term & Notice of Change of Additional Addresses for purpose of Notice." The letter stated, "Tenant hereby gives landlord this Extension Notice that Tenant has elected to exercise the First Extension Option granted in the Lease and does so with respect to the entire Demised Premises." Notwithstanding that the notice was sent via Federal Express rather than registered or certified mail, landlord did not dispute that tenant effectively exercised the first option to extend the lease to December 31, 2016. As of 2012, well after the first extension option was exercised, the parties were still negotiating the rent amount for that period.

¶ 9 On August 16, 2012, tenant, through Rosen, e-mailed Horowitz, who was landlord's representative and Masterworks' general counsel. The e-mail addressed matters tenant "would like to discuss," "would like to resolve," or "would propose." Rosen stated that he "would like to discuss" reaching an agreement for the rent amount and "would also like to discuss with you the improvements that the tenant would like to make with assistance from the Landlord." Additionally, "[t]enant would propose" that landlord match tenant's contributions to construction. A list of "[o]ther points tenant would like to resolve" included the following:

> "We are now in the first of two (2) five (5) year options. Tenant would like to exercise the second option now, so we don't have to do this again as soon. It may be better to simply convert both options to a ten (10) year extension term. The ten (10) year period will better enable amortization of Landlord's contribution to improvements. We would also like to add a five (5) year option at the end of the lease."

Rosen concluded, "Please contact me to discuss the tenant's proposal."

¶ 10 Rosen identified the proposal e-mail as tenant's exercise of the second option. In his deposition, he testified that the notice "wasn't pretty" but it was "sufficient." He also testified that the parties had previously deviated from the lease's notice provisions. According to Rosen, it did not make sense to tender the same type of notice as he had with the first option because landlord did not insist on formal notice and the parties were discussing other things. Rosen was looking for a comprehensive solution to all outstanding issues and clarified that tenant had wanted to exercise the second option immediately so that the parties would not have to negotiate rent again, which would benefit both parties. Rosen further testified it was beneficial to tenant to exercise the second extension option in 2012 and determine the rent for that period, in order to amortize tenant's contribution to improvements over a longer period.

¶ 11    Tenant's CEO, Linda Bacin, testified in her deposition that she exercised the second extension option in 2012 as part of a larger plan. Tenant planned on investing in improvements to the property, which would have warranted more than one five-year option. Bacin testified that she asked Rosen to exercise the second option in 2012 and never doubted tenant's right to continue operating at that location until December 31, 2021.

¶ 12    In contrast, Horowitz testified that while tenant could exercise the option at any time before January 1, 2016, it was not clear from the proposal e-mail that tenant was purporting to do so because the e-mail repeatedly identified items that tenant or Rosen "would like." Horowitz also observed that Rosen referred to the letter as a proposal and required changes to the current lease. Similarly, Masterworks employee Adam Bahna testified in his deposition that he viewed the proposal e-mail only as an informal proposal. Adam testified, "This is a letter asking for a bunch of stuff as part of a rent negotiation for the first extension." He testified that the proposals were "all part of a package."

¶ 13    On October 16, 2012, Adam wrote an e-mail to Ralph Bahna, Masterworks' CEO, and sent a copy to Horowitz. The e-mail addressed the unresolved rent amount and stated that landlord would deny tenant's request for landlord to pay for half of the improvements to the property. Adam stated, "They want to exercise their 2nd option now. The answer is no. They want to add another 5 year option to the lease. The answer is no." According to Adam, he did not intend for his comments to indicate he believed that tenant had exercised the second option.

¶ 14    Six days later, on October 22, 2012, Horowitz wrote to Rosen on landlord's behalf. "Your letter dated August 16, 2012 covers a number of points which I am responding to in order." Horowitz addressed, among other things, the unresolved rent amount and tenant's request for landlord to contribute toward improvements. Horowitz also stated:

> "Option Periods: The Landlord wants to follow the existing lease and not have the Tenant exercise their 2nd option now. The Landlord is also unwilling to add an additional 5 year option period to the lease."

Horowitz testified that his statement was a response to only one of several requests made in the proposal e-mail, not an acknowledgment that tenant was purporting to exercise the second option. Tenant took the opposite position, however. Moreover, Bacin testified that Rosen told her the lease did not allow landlord to reject her exercise of the option.

¶ 15    According to Rosen, he subsequently spoke to Horowitz on the telephone:

> "I *** pointed out that the landlord didn't have a choice in the matter, but that I could understand. If he didn't want to negotiate the rent with the second extension now, that would be okay with me as long as I didn't have to serve another notice. And my recollection is, he said okay. Because if I had insisted that it be now and not yielded to his desire to negotiate it later, then, according to the lease, he would have like ten days to start something with respect to the rent that would ultimately put us in arbitration if—if we couldn't agree."

Horowitz, however, submitted an affidavit denying that such conversation occurred or that he told Rosen additional notice was unnecessary. On November 26, 2012, Horowitz e-mailed Rosen, stating, "the rent and the term of the lease are, and must be, kept as two separate issues."

¶ 16    Almost three years later, on October 7, 2015, Bacin e-mailed Horowitz, asking him to advise her "of the process for notifying Masterworks of my intent to exercise the next option on our lease at 75 East Wacker Drive." Horowitz responded the same day: "A letter on company stationery to me should suffice. I'll need to see how we calculate rent." Horowitz testified that it would no longer make sense for Bacin to send a letter to the address in the lease, which was Ralph's address. Ralph died in 2014. Despite Horowitz advising Bacin of an acceptable process, tenant did not tender a letter to Horowitz on company stationery.

¶ 17    Meanwhile, Masterworks' manager, Francis Longo, asked Adam if tenant had notified landlord that it would extend the lease. Longo stated, "Per the Lease Precis, they have to notify us by January 1st, 2016. The expiration Date of First Extension Term is 12/31/16." Adam responded that he had not been notified.

¶ 18    Bacin testified that in May 2016, which we note was after the deadline for exercising the second option, landlord began showing the property to potential lessees. She had not thought about the second option again until then. Bacin e-mailed Horowitz on May 10, 2016. After discussing recent personal difficulties, she stated as follows:

> "Please know that I do want to stay as a tenant it was my understanding that we had exercised the options in our lease in the letter prior. If that is not the case please know that I still do want to stay. *** I understand that it's likely the rent may increase and I fully understand the need for renovation as I had hoped we would've extended the lease the last time and fully renovated at that time."

Horowitz responded within the hour, telling her to call at her convenience.

¶ 19    Three days later, Horowitz told Bacin to have Rosen call him. She responded that Rosen would meet with her the following week but asked Horowitz to "[p]lease let me know [*sic*] next steps." On June 1, 2016, Bacin apologized to Horowitz for not responding the week before. She stated, "My position has not changed. I want to renew my lease, I am interested and wanting to reinvest in the space and will work with you to assure that Bacinos is a long term asset to the building." Meanwhile, Bacin learned landlord was informing other individuals who worked in the building that tenant had not renewed its lease, and she engaged Donald Manikas to represent tenant. On July 18, 2016, Manikas wrote to Horowitz, asserting that tenant had already exercised the second option.

¶ 20    Horowitz responded the next day. He stated that landlord was surprised to learn that tenant believed it had exercised the second extension option, thereby extending the lease to December 31, 2021, because landlord had not received written notice complying with the lease. "In accordance with Article 27 of the Lease, please provide us with evidence that such notice has been delivered to Landlord as required under the clear and unambiguous terms of the Lease." Approximately one month later, Manikas responded that Rosen tendered written notice in 2012.

¶ 21                                   C. The Pleadings

¶ 22    Landlord then commenced this action, seeking a declaration that tenant did not exercise the second extension option and that, consequently, the lease would expire on December 31, 2016. Landlord later added counts for breach of contract as well as forcible entry and detainer.

¶ 23 In response, tenant filed a counterclaim seeking a declaration that it effectively exercised the second extension option, thereby extending the lease until December 31, 2021. Tenant also filed an answer identifying Rosen's proposal e-mail as tenant's exercise of the second extension option. Tenant added that landlord waived the right to assert that the option was not exercised because (1) landlord knew of tenant's intent to exercise it and (2) did not notify tenant until July 2016 that landlord believed the second option was not exercised. Furthermore, "tenant relied on [landlord's] words and actions that [landlord] knew and accepted that [tenant] exercised its rights regarding the Second Extension Option to its detriment." Tenant raised equitable estoppel based on the same facts.

¶ 24 We note that, contrary to tenant's suggestion, neither its counterclaim nor its answer alleged landlord had established a practice of accepting notice that deviated from the method prescribed by the lease or that landlord had waived the right to strict compliance as a result. We further note that tenant's pleadings did not refer to the alleged telephone conversation between Rosen and Horowitz.

¶ 25 In reply, landlord denied tenant's affirmative defenses and denied that tenant provided proper notice exercising the second option. Landlord also stated that it had no obligation to notify tenant of its failure to exercise the option. Landlord's pleadings did not, however, mention the no-waiver clause.

¶ 26 The parties filed cross-motions for summary judgment with respect to the second extension option. Landlord argued, among other things, that it was entitled to strict compliance with the terms of the option but tenant failed to send the proposal e-mail to landlord's address and did not send notice via certified or registered mail. In any event, the proposal e-mail did not constitute a definite, unequivocal, and unconditional exercise of the option to renew for a second five-year period because that proposal was sent as part of negotiations over the rent amount for the first extension period, which landlord construed as an argument toward establishing a better deal. Landlord further argued that additional matters were raised in the proposal e-mail and tenant stated only that it "would like" to exercise the option. Once again, landlord did not mention the no-waiver clause.

¶ 27 In contrast, tenant maintained that the proposal e-mail was clear, unconditional, and sufficient to exercise the second option. Additionally, Adam and Horowitz were aware of that e-mail, and actual notice was sufficient. Tenant further argued that equitable considerations warranted summary judgment. While tenant observed that landlord only recently asserted that notice was ineffective due to technical deficiencies, we note that tenant's summary judgment pleadings did not assert waiver on that basis. Moreover, tenant did not attempt to rely on the disputed telephone conversation.

¶ 28 Following a hearing, the trial court entered summary judgment in favor of tenant on its counterclaim and landlord's declaratory judgment count, finding that the proposal e-mail was a clear and unambiguous exercise of the second option. The court also found that Bacin's subsequent e-mail asking how to exercise the second option did not negate that. We note that while tenant had argued at this hearing that landlord had a practice of forgoing strict compliance and had "abandoned" it, tenant did not specifically raise "waiver" on that basis. Nonetheless, the court determined that landlord waived strict compliance with the requisite method of notice based on the same reasoning. Despite that determination, landlord did not

bring the lease's no-waiver clause to the court's attention.[2]

## II. ANALYSIS

On appeal, landlord challenges the trial court's summary judgment ruling, asserting among other things that tenant failed to strictly comply with the lease's notice requirements and that the proposal e-mail did not constitute an unequivocal exercise of the second option. Both parties have also raised numerous instances of waiver.[3]

We review the trial court's summary judgment ruling *de novo*. *Genesco, Inc. v. 33 North LaSalle Partners, L.P.*, 383 Ill. App. 3d 115, 118 (2008). Accordingly, we review the court's judgment, not its reasoning. *Morningside North Apartments I, LLC v. 1000 N. La Salle, LLC*, 2017 IL App (1st) 162274, ¶ 10. Summary judgment is appropriate where the pleadings, admissions, depositions, and affidavits reveal no genuine issue of material fact so that the movant is entitled to judgment as a matter of law. *Id.*

### A. Strict Compliance v. Actual Notice

Our supreme court's seminal decision in *Dikeman v. Sunday Creek Coal Co.*, 184 Ill. 546 (1900), remains the leading authority on this options matter. The contractually mandated time for performance is generally an essential term of a contract. *Id.* at 550. Unless that term is waived, an option is lost due to untimeliness. *Id.* Discussing the nature of the option before it, *Dikeman* stated, "[t]he agreement was purely a privilege given to the lessee without any corresponding right or privilege of the lessor, and the only stipulation was that the right should be exercised at a certain time." *Id.* at 551.

Since *Dikeman*, courts have generally required strict compliance with options. See *Genesco, Inc.*, 383 Ill. App. 3d at 119; see also *T.C.T. Building Partnership v. Tandy Corp.*, 323 Ill. App. 3d 114, 115, 119, 120 (2001) (treating the method for exercising an option as a condition precedent requiring strict compliance). Strict compliance is dictated not only by precedent, but by the needs of commercial transactions and fairness. *Thompson Learning, Inc. v. Olympia Properties, LLC*, 365 Ill. App. 3d 621, 629 (2006). Options to cancel or extend commercial leases are invaluable to a lessee, and a lessor generally does not receive consideration for the lessor's agreement to be bound by an exercise of the option. *Id.* Thus, a lessor may insist on a writing to further certainty as the lessor forgoes other opportunities to lease the space. *Id.* at 630. Courts have also recognized that a lessee should be strictly held to the agreed terms because the parties to commercial leases are usually sophisticated. *Genesco, Inc.*, 383 Ill. App. 3d at 119.

Consequently, actual or oral notice is insufficient to exercise an option where a party has failed to provide timely written notice. *Id.*; *Thompson Learning, Inc.*, 365 Ill. App. 3d at 627. Instead, such notice "is just another way of highlighting Tenant's failure to strictly comply." (Internal quotation marks omitted.) *Genesco, Inc.*, 383 Ill. App. 3d at 119-20 (quoting

---

[2]The trial court entered a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016).

[3] The parties have failed to differentiate between the concepts of waiver and forfeiture. Notwithstanding this inaccuracy, we follow suit and use the term "waiver" throughout. See *Gallagher v. Lenart*, 226 Ill. 2d 208, 229 (2007) (stating that waiver is an intentional relinquishment of a known right whereas forfeiture constitutes the failure to timely assert a right).

*Thompson Learning, Inc.*, 365 Ill. App. 3d at 633). Furthermore, cases finding actual notice to be sufficient outside the options context have no bearing on notice in options cases. *Thompson Learning, Inc.*, 365 Ill. App. 3d at 629; *Epton v. CBC Corp.*, 48 Ill. App. 2d 274, 281 (1964) (observing that "[a]n option agreement is a unilateral agreement governed by rules of law entirely distinct from those applicable to bilateral contracts"); *cf. Vole, Inc. v. Georgacopoulos*, 181 Ill. App. 3d 1012, 1019 (1989) (where a tenant admittedly received his landlord's notification that the landlord objected to the tenant's signage, the reviewing court stated that "[i]n general, the object of notice is to inform the party notified, and if the information is obtained in any way other than formal notice, the object of notice is attained").

¶ 36        Here, no one suggests that landlord waived the deadline for exercising the second option. In addition, tenant does not dispute that it failed to strictly comply with the method of notice prescribed by the lease. Instead, tenant argues that actual notice is a sufficient substitute for the lease requirements and landlord waived strict compliance with the requisite method of notice. See *T.C.T. Building Partnership*, 323 Ill. App. 3d at 120 (stating that conditions in the form of a notice required can be waived by the party whom the requirement was intended to benefit).

¶ 37        *Dikeman* and its progeny clearly defeat tenant's assertion that actual notice is sufficient. In any event, landlord disputes that it had actual notice. We also categorically reject any reliance on Rosen's testimony that Horowitz orally agreed to waive notice. As tenant recognizes, a party waives any theories not raised before the court during summary judgment proceedings. *US Bank, National Ass'n v. Avdic*, 2014 IL App (1st) 121759, ¶ 34; see also *Frederick v. Professional Truck Driving School, Inc.*, 328 Ill. App. 3d 472, 479 (2002) (finding on appeal from summary judgment for the defendant that the plaintiff waived an issue by failing to raise it in his complaint or otherwise raise it before the trial court). In addition, none of tenant's pertinent pleadings addressed the alleged conversation. Rosen's testimony was also contradicted by Horowitz, creating a factual dispute that would preclude summary judgment on that basis.

¶ 38        Assuming, without deciding, that (1) tenant did not waive its assertion that landlord waived strict compliance through a practice of forgoing lease requirements, (2) landlord did in fact waive strict compliance with the method of notice prescribed by the lease, and (3) landlord waived reliance on the no-waiver clause, we would nonetheless find the proposal e-mail did not constitute an effective exercise of the second option. Any notice found in the proposal e-mail was equivocal at best.

¶ 39        The acceptance of an offer contained in an option must be specific, certain, and unconditional. See *Wentcher v. Busby*, 98 Ill. App. 3d 775, 783 (1981). In determining whether an option was effectively exercised, we must construe the purported exercise in context. See *Morris v. Goldthorp*, 390 Ill. 186, 196 (1945) (stating that "[i]n construing this sentence, those words obviously must be considered, not only with the balance of the sentence in which they are found, but with all the language which follows them"); *Department of Public Works & Buildings v. Halls*, 35 Ill. 2d 283, 286-87 (1966) (considering a purported exercise of an option in its entirety). When considered in context, no landlord would have reasonably understood the proposal e-mail and tenant's statement that it "would like to exercise the second option now" as purporting to contemporaneously and unconditionally exercise the second option.

¶ 40     As stated, the proposal e-mail referred to matters tenant "would like to discuss," "would like to resolve," or "would propose." Tenant stated that it "would like" to exercise the second option now, not that it was purporting to do so. Compare *Department of Public Works & Buildings*, 35 Ill. 2d at 284, 286 (finding a purported acceptance of an option was equivocal and added a new condition even where the acceptance stated, " 'YOU ARE HEREBY NOTIFIED that I have elected to exercise the option to purchase the real estate' "), with *Gaskins v. Walz*, 409 Ill. 40, 44 (1951) (finding acceptance of an option to be unequivocal where it stated, " 'You are hereby notified that the option contained in said lease to purchase said property for the sum of $17,500.00 is hereby exercised' "). Furthermore, the e-mail arose in the course of lengthy negotiations over the rent amount for the first extension period and proposed that landlord contribute toward improvements as well as grant a third option to extend the lease. The e-mail concluded by collectively referring to the matters therein as one proposal. Rosen testified it was accurate to say he was looking for a comprehensive solution to all of the parties' outstanding issues. That is precisely how one would understand the e-mail.

¶ 41     Rosen testified it was beneficial to tenant to exercise the second extension option in 2012 in order to amortize contribution improvements over a longer period. Bacin testified that tenant planned on investing in improvements to property, which would have warranted more than one five-year option. A landlord reading the proposal e-mail would not comprehend that tenant intended to exercise the option even if tenant's other proposals were rejected. While Bacin denied that tenant wanted to exercise the second option only if the parties could set a rent amount for that second period, a landlord examining the e-mail in question would have no means of deducing that. *Cf. Oliva v. Amtech Reliable Elevator Co.*, 366 Ill. App. 3d 148, 152-53 (2006) (finding that where the parties' agreement setting forth the option was silent as to notice, the law did not require any and the tenant exercised the option by remaining in possession of the property). To be clear, we do not find the proposal e-mail was equivocal for the reason that it deviated from the notice exercising the first extension option. Indeed, different language may have permitted tenant to unequivocally exercise the second option. The language that tenant used in the proposal e-mail, however, did not.

¶ 42     Contrary to tenant's suggestion, Adam's subsequent statement—that tenant and its representatives wanted to "exercise their 2nd option now"—was entirely consistent with an understanding that tenant was informally proposing to exercise the second option as part of a larger plan. Adam stated only that tenant *wanted* to exercise the option, not that tenant had done so. Furthermore, Horowitz's statement to Rosen—that "The Landlord wants to follow the existing lease and not have the Tenant exercise their 2nd option now"—did not constitute an improper attempt to reject tenant's exercise of the option. Tenant had to have exercised the option before landlord could attempt to reject it. Moreover, tenant has cited no legal authority supporting its suggestion that landlord had a duty to notify tenant that it had failed to exercise the option. Surely, tenant, rather than landlord, was in the best position to proactively protect its contractual rights.

¶ 43                                          B. Equitable Relief

¶ 44     Finally, the record does not show that equitable relief would be appropriate under these circumstances. Equitable relief is available where time is not of the essence, but where time is of the essence, courts will hold parties to their agreement. *Dikeman*, 184 Ill. at 550. In

addition, *Dikeman* observed that neither fraud, mistake, nor accident led the lessee in that case to fail to timely avail itself of its option; instead, the lessee identified only the negligence of its agent. *Id.* at 551; see also *Genesco, Inc.*, 383 Ill. App. 3d at 128 (Theis, J., specially concurring) (stating that "the holding of *Dikeman*, that Illinois courts will never exercise their equitable powers to relieve negligent or careless failures to timely and properly comply with the terms of an option, is still the law"). But see *Ceres Terminals, Inc. v. Chicago City Bank & Trust Co.*, 117 Ill. App. 3d 399, 402, 405 (1983) (stating that *Dikeman* held only that undue hardship must be shown before equity will assist the negligent and that no undue hardship was established in *Dikeman*). The supreme court concluded, "[the lessee] lost its legal right by failing to comply with the condition precedent, and we do not see how equity can relieve against mere forgetfulness." *Dikeman*, 184 Ill. at 551.

¶ 45   After *Dikeman*, other panels of this court have applied a three-part test to determine if equitable relief may cure the ineffective exercise of an option. See *Thompson Learning, Inc.*, 365 Ill. App. 3d at 633. But see *Genesco, Inc.*, 383 Ill. App. 3d at 126-28 (Theis, J., specially concurring) (expressing doubt as to whether Illinois has adopted the aforementioned three-part test for determining whether equity can relieve a party from failing to strictly comply). Yet, we find *Dikeman*'s clear language precludes equitable relief where an option contract indicates that time is of the essence or where a contracting party loses its legal right through the negligence of its agent or mere forgetfulness. But see *Linn Corp. v. LaSalle National Bank*, 98 Ill. App. 3d 480, 481, 483-84 (1981) (finding equitable relief to be appropriate where renewal options were granted in return for the tenant making substantial improvements and untimely notice of renewal would not cause substantial hardship, despite that the untimeliness resulted from the tenant's carelessness).

¶ 46   Here, the lease stated that time was of the essence. This alone would foreclose equitable relief. Although credibility judgments are inappropriate at the summary judgment stage, we further note that a trier of fact could find that tenant failed to timely exercise the second option due to inattention on the part of Bacin and/or Rosen.

¶ 47                              III. Conclusion

¶ 48   Tenant's proposal e-mail did not constitute unequivocal, unconditional notice that tenant was exercising the option. Additionally, equitable relief was unavailable where the lease provided that time was of the essence. Because tenant failed to provide timely notice that it was exercising the second option to extend the lease term, the lease expired. Accordingly, landlord, rather than tenant, is entitled to summary judgment.

¶ 49   For the foregoing reasons, we reverse and remand for the trial court to enter summary judgment in favor of landlord, and against tenant, and to address landlord's remaining counts.

¶ 50   Reversed and remanded.