# Illinois Official Reports

## Appellate Court

---

**900 North Rush LLC v. Intermix Holdco, Inc.**, 2019 IL App (1st) 181914

---

| | |
|---|---|
| Appellate Court Caption | 900 NORTH RUSH LLC and LP HOLDINGS HSR I, LLC, Plaintiffs-Appellants, v. INTERMIX HOLDCO, INC., Defendant-Appellee. |
| District & No. | First District, First Division<br>Nos. 1-18-1914, 1-18-2030, 1-18-2684 cons. |
| Filed | August 26, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 17-M1-709969; the Hon. Anthony C. Swanagan, Judge, presiding. |
| Judgment | Affirmed as modified. |
| Counsel on Appeal | Gerald B. Lurie, of Chen Roberts Ltd., of Chicago, for appellants.<br><br>Charles A. Valente and Isaiah A. Fishman, of Kaplan Saunders Valente & Beninati LLP, of Chicago, and Michael A. Geibelson, of Rovins Kaplan LLP, of Los Angeles, California, for appellee. |
| Panel | JUSTICE GRIFFIN delivered the judgment of the court, with opinion.<br>Justices Pierce and Walker concurred in the judgment and opinion. |

¶ 1        This case concerns a commercial lease agreement between the parties. The lease agreement contains a renewal option that, if exercised, grants the tenant an additional five-year tenancy. The tenant attempted to exercise the option, but when it signed the exercise of option notice, it included the name of one of its sister companies in the signature block of the notice rather than the name of the tenant.

¶ 2        When the tenant refused to vacate the premises at the end of the original lease term, the landlord brought this case for eviction. The case required the trial court to determine whether the tenant had complied with the conditions for exercising the option. The trial court found that the option was properly exercised so that the tenant could remain in the premises and was not in default. The trial court also awarded the tenant its attorney fees and costs under a fee-shifting provision of the lease. The landlord appeals, arguing that the option was not properly exercised and that the trial court erred in its assessment of fees and costs. We affirm.

## I. BACKGROUND

¶ 4        In July 2006, the predecessor in interest of defendant Intermix Holdco, Inc. (Intermix), entered into a lease agreement with the predecessor in interest of 900 North Rush, LLC (900 North Rush), to rent retail space in a building located at 40 East Delaware Place in Chicago. The initial lease term extended to April 30, 2017, but the lease contained a renewal option that the tenant could exercise for an additional five-year term. Under the lease, Intermix could exercise the renewal option "by notifying Landlord, in writing, of its election to renew the Term for the Renewal Term on or before the date that is one hundred twenty (120) days prior to the expiration of the initial Term of the Lease."

¶ 5        During the original lease term, the original lessor, L.I. Portfolio Holdings, LLC, was succeeded by plaintiff 900 North Rush as part of a refinance transaction. Similarly, during the lease's original term, Gap, Inc., acquired Intermix, LLC, and Intermix, LLC, was merged into defendant Intermix. Gap, Inc., is the parent company of Intermix, Old Navy, LLC, and a number of other retail clothing stores.

¶ 6        On November 29, 2016, Matthew Irwin, a member of Gap, Inc.'s real estate law department, sent a letter to 900 North Rush. The letter contains the following heading: "Re: Exercise of Option Notice, Intermix #2357, E. Delaware (Rush-Chicago) (the "Premises"), Chicago, Illinois." The letter is on Gap, Inc.'s, letterhead and states that "Pursuant to Article XXI of the lease, Tenant hereby exercises its right to extend the term of the Lease for an additional five (5) years commencing on May 1, 2017 and expiring on April 30, 2022." The letter is signed by Matthew Irwin, senior director-associate general counsel. Above Irwin's signature, the letter states "Very Truly Yours, *Old Navy, LLC*." (Emphasis added).

¶ 7        Fred Latsko, the manager of 900 North Rush, timely received the letter and knew that Intermix was attempting to exercise its renewal option. However, because the option was purportedly exercised in the name of Old Navy, LLC, not a party to the lease, he believed that the option was not properly exercised. Latsko sent a letter to Intermix, stating that Irwin's letter was "deficient" as an attempt to exercise the option because "our lease required that the *Tenant* has the right to exercise this lease and [Irwin's] letter clearly does not fulfill the requirement under the lease." (Emphasis added.) By the time Latsko received the letter and notified

Intermix of its purported ineffectiveness, the deadline for exercising the option under the lease had passed.

¶ 8    When the original lease term ended, Intermix did not vacate the leased premises. About two weeks later, 900 North Rush served Intermix with a demand for possession, in which it reiterated that it did not accept Irwin's letter as an effective exercise of the lease's renewal option. After Intermix failed to vacate the premises, 900 North Rush filed a complaint for eviction and for holdover rent.

¶ 9    In response to 900 North Rush's complaint, Intermix asserted an affirmative defense, in which it contended that Irwin's letter was an effective exercise of the renewal option and, thus, that it was not liable. The parties conducted discovery and Intermix filed a motion for summary judgment. Intermix's motion for summary judgment, in relevant part, is based on its affirmative defense—that it is entitled to summary judgment because it exercised the lease's renewal option. The trial court held that Irwin's letter was an effective exercise of the renewal option so that Intermix was not in default under the lease.

¶ 10    The trial court issued a written order detailing its ruling. The trial court observed that the lease provision governing the renewal option specified that notice be given in writing and specified to whom the notice had to be given but did not specify who could provide such notice. The trial court noted that Irwin's letter could only be ineffective if it could be construed to have not come from Intermix. Considering the content of the letter as a whole, the trial court found that Irwin acted as an agent for Intermix and that his signature was an effective exercise of Intermix's option to renew the lease term.

¶ 11    After obtaining a judgment of no liability in its favor, Intermix petitioned the court for attorney fees. 900 North Rush filed a written response to the fee petition, and Intermix filed a reply. 900 North Rush requested that the court hold an evidentiary hearing on Intermix's fee petition. The trial court did not grant 900 North Rush an evidentiary hearing on the fee petition, but it permitted 900 North Rush to file a surreply. The court held a hearing, but not an evidentiary hearing, on the fee petition, and the trial court concluded by awarding Intermix $125,832 in attorney fees. 900 North Rush appeals, raising issues regarding the adverse judgment and the award of attorney fees.

¶ 12                                          II. ANALYSIS
¶ 13                              A. Exercise of the Renewal Option
¶ 14    The trial court granted summary judgment in favor of defendant Intermix, finding that it was not liable because it had exercised the renewal option. 900 North Rush appeals the adverse judgment entered against it. The parties agree that our review is of an issue of law—whether Intermix satisfied the lease's requirements for effectively exercising the renewal option. Insofar as the option issue is concerned, the parties agree that there are no disputes as to any material facts.

¶ 15    Summary judgment is appropriate when the pleadings, depositions, admissions, and affidavits, viewed in a light most favorable to the nonmovant, fail to establish that a genuine issue of material fact exists, thereby entitling the moving party to judgment as a matter of law. 735 ILCS 5/2-1005 (West 2012); *Fox v. Seiden*, 2016 IL App (1st) 141984, ¶ 12. If disputes as to material facts exist or if reasonable minds may differ with respect to the inferences drawn from the evidence, summary judgment may not be granted. *Fox*, 2016 IL App (1st) 141984,

¶ 12. We review a trial court's decision to grant summary judgment *de novo*. *Illinois Tool Works Inc. v. Travelers Casualty & Surety Co.*, 2015 IL App (1st) 132350, ¶ 8.

¶ 16    In the trial court, Intermix moved for summary judgment on the basis that Irwin's letter constituted an exercise of its option as a matter of law and, thus, that it was entitled to a judgment in its favor. 900 North Rush argued that Intermix's "attempt" to exercise the option was ineffective because Intermix did not strictly comply with the lease's requirements for exercising the option. 900 North Rush contended that, because Irwin's letter attempting to exercise the option was written and signed by Irwin as senior director-associate general counsel of Old Navy, LLC, it cannot constitute an act on behalf of Intermix, the tenant, as was required under the lease for an effective exercise of the option.

¶ 17    A lessee that is seeking to exercise an option to cancel or extend a commercial lease must strictly comply with the terms of that option. *Thomson Learning, Inc. v. Olympia Properties, LLC*, 365 Ill. App. 3d 621, 627 (2006). Although strict compliance might seem a harsh rule in some cases, the requirement has great value in promoting security in commercial transactions. *Id.* at 631. The lessor is entitled to legal certainty regarding the lessee's intent as the lessor is forgoing other opportunities to lease the space. *Michigan Wacker Associates, LLC v. Casdan, Inc.*, 2018 IL App (1st) 171222, ¶ 34. A standard of strict compliance is also supported by the fact that the parties to commercial leases are usually sophisticated. *Id.* Options to cancel or extend commercial leases are invaluable to a lessee, and a lessor generally does not receive separate consideration for its agreement to be bound by the exercise of the option. *Id.*

¶ 18    Thus, under the strict compliance standard applicable to leasing options, failure to timely exercise the option is fatal. *Thomson Learning*, 365 Ill. App. 3d at 627-28. In addition, a lessor may insist that the exercise of an option be done in writing. *Michigan Wacker Associates*, 2018 IL App (1st) 171222, ¶ 34. Where a lease agreement requires written notice for the exercise of a renewal option, neither oral notice nor the lessor's actual knowledge of the lessee's intent is sufficient. *Id.* ¶ 35.

¶ 19    The lease provision at issue provided that Intermix, the "Tenant," could renew the lease by "notifying Landlord, in writing, of its election to renew" within 120 days before the initial lease term expired. There is no issue about timeliness. There is no issue about whether the notice was given in proper form—a written notice was provided. There is no issue about whether 900 North Rush received the writing and had actual notice that Intermix was trying to exercise the option. The only issue is about the identity of the party providing notice. We are called upon to simply decide whether Irwin's letter complied with the lease's requirement that the *Tenant* notify the landlord of its election to exercise the option.

¶ 20    900 North Rush's position is that "a letter from Old Navy purporting to exercise the renewal option did not constitute strict compliance with section 21.01 of the lease." (Emphasis omitted.) 900 North Rush contends that Irwin's letter failed to satisfy the pivotal requirement that the *Tenant* exercise its right to renew by notifying the Landlord of *its* election to renew. Instead, according to 900 North Rush, the signature block reads Old Navy, LLC, by *its* senior director and associate general counsel. 900 North Rush posits that the lease renewal provision requires that the tenant exercise the option, "not a stranger to the lease—which Old Navy unquestionably is."

¶ 21    900 North Rush points out that nowhere in Irwin's letter does he state that the option is being exercised "on behalf of" Intermix. It also points out that Intermix had executed numerous documents during the parties' course of dealings in which it did sign the documents in its own

- 4 -

capacity, and that Intermix had insisted on a strict interpretation of the lease during a previous dispute between the parties. 900 North Rush concludes that Irwin's letter "is simply not a manifestation by Intermix of its election to exercise the renewal option" and fails to satisfy the strict compliance requirement.

¶ 22    We conclude that Intermix effectively exercised its renewal option. Irwin's letter is addressed to 900 North Rush and states that the letter is being sent regarding the lease at issue and for the purpose of exercising the option. The letter contains the subject line "Re: Exercise of Option Notice, Intermix #2357, E. Delaware (Rush-Chicago) (the "Premises"), Chicago, Illinois." The letter details that it pertains to the lease dated July 31, 2006, between the parties, with 900 North Rush as "Landlord" and Intermix as "Tenant." The letter then clearly states that "[p]ursuant to Article XXI of the Lease, Tenant hereby exercises its right to extend the term of the Lease for an additional five (5) years commencing on May 1, 2017 and expiring on April 30, 2022."

¶ 23    It is unmistakable that Intermix (Tenant) articulated its intent through this language to exercise the option. 900 North Rush does not dispute that Irwin had actual authority to act on Intermix's behalf and to bind Intermix to the extended lease term as Irwin averred in his affidavit submitted in support of the motion for summary judgment. 900 North Rush characterizes Irwin's letter as being a letter from Old Navy, LLC. But that is a selective view of the document. Old Navy is only referenced in Irwin's signature block. The content of the letter speaks from the perspective of Intermix. It states that "Tenant hereby exercises its right." The letter also speaks to "Tenant's exercise of its option." It would be illogical for us to treat the letter as an act of Old Navy or as an act of anyone other than Intermix.

¶ 24    The use of the incorrect signature block does not change the fact that Irwin was, in fact, exercising the option for Intermix. The lease was minimal in its requirements. The lease only strictly required a "writing," from Intermix, "notifying" 900 North Rush "of its election to renew." The letter meets those requirements. It is a writing that clearly conveys to 900 North Rush that the *Tenant* is exercising its contractual rights by electing to renew. The lease contains other provisions that do require a party's signature, such as the provision governing contract modifications, but a signature requirement is conspicuously lacking from the renewal provision. The signature block on its own did not create some kind of ambiguity that prevented Intermix from meeting the lease's requirements even under the strict compliance standard. Even though the letter is signed over a signature block for Old Navy, the notice still came from Intermix as was required under the lease.

¶ 25    It seems apparent that if Irwin had left the signature block blank and simply signed the document there would be no arguable basis for finding that the option was not effectively exercised. In fact, a signature was not even required. The inclusion of Old Navy in the signature block is surplusage in regard to the information that the lease required to be conveyed for an effective exercise of the option. The document entitled "exercise of option notice" checks all the boxes under the lease to strictly comply and to constitute an effective exercise of the option by Intermix. When the letter is considered as a whole, instead of focusing on one errant provision, it comprises an effective exercise of the option.

¶ 26    Moreover, and while not outcome determinative, Fred Latsko, 900 North Rush's manager, admits that when he received the letter, he knew that Intermix was trying to exercise the option. Latsko recognized that Intermix, through Irwin, was trying to exercise its option but had made a mistake. 900 North Rush admitted that when it received the letter it knew that Intermix was

acting, not that Old Navy was acting. In this litigation, 900 North Rush seeks to capitalize on what it knew to be a mistake in order to declare the exercise of the option invalid.

¶ 27　　While it is true that a technicality can sometimes result in a forfeiture as a result of the strict compliance standard applied to options in commercial leases, the technicality here is not material to the terms required by the lease for effectively exercising the option. Not only was the misstatement referencing Old Navy immaterial to the terms of the lease renewal provision, it was immaterial to 900 North Rush itself. Latsko was asked at his deposition whether, when he received the letter, he "understood that Intermix Holdco was attempting to exercise the option, not Old Navy." Latsko responded "correct." The questioning continued, "But you thought that in doing so, Intermix Holdco had screwed up and so, based on that, you could claim their attempt was invalid?" "Correct," Latsko answered. Even at the oral argument in this court, 900 North Rush admitted that it was "trying to take advantage of a mistake." Although 900 North Rush has built a reasonable legal position on what amounts to "gotcha," its position is untenable when it comes to settling the parties' legal rights.

¶ 28　　Intermix presented evidence that 900 North Rush had relatively frequent communications with members of Gap's real estate law department about the lease. Irwin's letter was composed on Gap, Inc., letterhead. 900 North Rush never raised an issue about Gap lawyers acting as agents for Intermix, and the only time it raised an issue about Gap attorneys speaking for Intermix was here.

¶ 29　　Although the letter never states that either Irwin or Old Navy was acting "on behalf of" Intermix, such a statement was not required. Irwin was not acting for Old Navy as an agent of Intermix. It was, in fact, Intermix that was acting—not another entity acting on its behalf. The letter expressly states that it was *Tenant* that was exercising its option rights. Latsko knew that was the reality. And Irwin had the actual authority to perform this act for *Intermix itself*.

¶ 30　　Helpful to our resolution of this case was to look at the case from another angle. The judges on this panel discussed and analyzed whether, if the situation was flipped, we would hold Intermix to the renewed lease term. That is: if Irwin had sent the same letter that he sent, but Intermix was now trying to back out of the renewed lease term, would we hold them to it? And we would. Though it is no consolation to 900 North Rush, Intermix would likewise be bound to the renewed term by its manifestation of assent through Irwin's letter. Irwin had actual authority to act on behalf of Intermix, and he did act to bind Intermix to the renewal term. If Intermix would be bound under those circumstances, then 900 North Rush must be bound under these circumstances.

¶ 31　　At the very most, the inconsistency brought about by having Old Navy in the signature block could have created a question of fact regarding Irwin's authority as an agent. But Irwin's uncontested and unimpeached affidavit contains an attestation that he had the authority to act for Intermix in this instance. The parties' course of dealings evidences the authority that attorneys in Gap, Inc.'s law department had to act for Intermix. There is no genuine issue of material fact that would preclude the entry of summary judgment in Intermix's favor. The option exercise notice was sent by Intermix and constituted an act by Intermix sufficient to meet the requirements for exercising the renewal option.

¶ 32　　　　　　　　　　　　　　　　B. Attorney Fees

¶ 33　　The trial court awarded Intermix $125,832 in attorney fees and litigation expenses. 900 North Rush argues that the trial court erred when the court denied its request for an evidentiary

hearing on the attorney fee issue. 900 North Rush also argues that the amount of fees that the trial court awarded was not reasonable.

¶ 34 The lease provides that "[i]n the event of any litigation between the parties under this Lease, the prevailing party in such litigation shall be entitled to receive reasonable attorneys' and paralegals' fees, (including all levels of appeal), and all reasonable costs and expenses of any and all such proceedings from the non-prevailing party." Under that provision, Intermix submitted a petition for attorney fees and costs after judgment was entered in its favor. 900 North Rush submitted a written objection to the petition, arguing that certain of the fees were duplicative, that certain billings were excessive, and that the bills included entries for work that was not related to this lawsuit.

¶ 35 In its written response to Intermix's fee petition, 900 North Rush claimed that "issues of fact are involved in certain of 900 North Rush's objections to the fees and costs Intermix is seeking." 900 North Rush, thus, asserted that it was entitled to an evidentiary hearing on the fee petition (*U.S. Bank National Ass'n v. Randhurst Crossing LLC*, 2018 IL App (1st) 170348, ¶ 83). In ruling on Intermix's fee petition, the trial court found that there were no issues of fact that necessitated an evidentiary hearing, and it denied 900 North Rush's request.

¶ 36 900 North Rush argues that it was entitled to an evidentiary hearing in which it would be permitted to introduce approximately 5000 documents that Intermix produced into evidence so that the court could see that the majority of the documents were nonresponsive to its discovery requests. 900 North Rush also wanted to call Intermix's attorneys to testify in an attempt to show that certain work for which those attorneys billed was not related to the defense of this lawsuit. 900 North Rush concludes that, as a result of the trial court's decision to deny its request for an evidentiary hearing, it was deprived of the opportunity to introduce evidence to support its claims of duplicative work, excessive billing, and billing for work not related to the defense of this case.

¶ 37 Whether to conduct an evidentiary hearing is within the discretion of the circuit court. *A.L. Dougherty Real Estate Management Co. v. Su Chin Tsai*, 2017 IL App (1st) 161949, ¶ 46. A petition for attorney fees warrants an evidentiary hearing only when the response of the party to be charged with paying the award raises issues of fact that cannot be resolved without further evidence. *Id.*

¶ 38 Here, the trial court did not abuse its discretion when it denied 900 North Rush's request for an evidentiary hearing. The trial court permitted 900 North Rush to file a response to the fee petition and a surreply. The trial court also entertained oral arguments on the fee petition. 900 North Rush fails to identify what material questions of fact the trial court needed resolved in order to make an appropriate ruling on Intermix's fee petition.

¶ 39 900 North Rush claims that an evidentiary hearing on Intermix's fee petition could have helped resolve its claims of duplicative work, excessive billing, and billing for work not related to the defense of this case by Intermix's attorneys. But 900 North Rush does not persuasively explain why the court could not resolve those questions based on the parties' papers and on their oral arguments. In fact, the trial court awarded Intermix less than it requested because the court determined through its examination that some of the fees requested by Intermix were not related to this case, that not all of the requested fees on specific tasks were reasonably necessary, and that some of counsel's travel expenses should not be included in the fee award. The record indicates that the trial court was able to, and did, carefully review the billing records submitted by Intermix against the objections raised by 900 North Rush and make an informed

and reasoned decision on the fees to be awarded. We fail to see how the trial court's determination on the fee award could be considered compromised on the basis of it not holding an evidentiary hearing.

¶ 40 Moreover, 900 North Rush did not make a sufficient record in the trial court regarding what might be elicited at an evidentiary hearing so that we might find that the trial court abused its discretion in denying its request for such a hearing. 900 North Rush explains that it believes Intermix produced 5000 pages of documents in discovery that were not responsive to its discovery requests. It argues that it should have been permitted to introduce those 5000 pages of documents to support its argument of excessive billing. But 900 North Rush does not explain why it could not have attached those documents to its response to Intermix's fee petition. 900 North Rush also argues that it should have been able to call one of Intermix's attorneys in an attempt to prove that certain work billed by that attorney was not related to the defense of this lawsuit. But again, 900 North Rush does not explain why the trial court could not resolve those questions based on what was actually submitted. In fact, the trial court reduced the amounts sought by Intermix on that basis. There is nothing in the record from which we could glean what 900 North Rush could have proved at an evidentiary hearing that it was prevented from proving through written submissions and oral argument. See *A.L. Dougherty*, 2017 IL App (1st) 161949, ¶ 50.

¶ 41 900 North Rush argues that the amount of fees and costs the trial court awarded to Intermix was not reasonable. Among the factors to be considered in determining the reasonable value of an attorney's services are the skill and standing of the attorney employed, the nature of the cause and the novelty and difficulty of the questions at issue, the amount and importance of the subject matter, the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the benefits resulting to the client. *Laff v. Chapman Performance Products, Inc.*, 63 Ill. App. 3d 297, 307 (1978). When it issued its written ruling, the trial court indicated that it considered the relevant factors, among other considerations. A trial court has broad discretion to award attorney fees, and its decision will not be disturbed on appeal absent an abuse of that discretion. *Northbrook Bank & Trust Co. v. Abbas*, 2018 IL App (1st) 162972, ¶ 61.

¶ 42 To support its contention that the fees requested by Intermix were unreasonable, 900 North Rush argues that Intermix's fee petition, and the affidavits supporting it, fail to demonstrate the exercise of "billing judgment" by Intermix's attorneys (*Murillo v. City of Chicago*, 2016 IL App (1st) 143002, ¶ 33). 900 North Rush contends that Intermix did not inform the court about the nature of the work that the lawyers performed or why it was reasonably necessary, nor did Intermix offer evidence to support its contention that the hourly rates were usual and customary in the Chicago legal marketplace for comparable work. 900 North Rush complains that Intermix seeks fees for both local and national counsel who were engaged on the case and suggests that Intermix fails to demonstrate any heightened efficiency as a result of the two law firms working together. Instead, 900 North Rush argues, the amounts charged by the two firms belie their attestations of efficient collaboration.

¶ 43 Contrary to 900 North Rush's assertions, in conjunction with its fee petition, Intermix filed the billing statements its attorneys had generated throughout the litigation. In general, those billing statements detail the work that was performed, who performed it, the amount of time spent on the task described, and the amount charged for the services. The records supporting the fee petition are the type of records generally produced in conjunction with fee petitions in

the circuit court of Cook County. See *Kaiser v. MEPC American Properties, Inc.*, 164 Ill. App. 3d 978, 984 (1987) ("the petition for fees must specify the services performed, by whom they were performed, the time expended thereon and the hourly rate charged therefor"). For the most part, the records submitted by Intermix were sufficiently detailed to justify awarding fees. However, not all of the records submitted were sufficient for Intermix to meet its burden.

¶ 44    Our review of the records, helpfully detailed by 900 North Rush, reveals that several of Intermix's billing entries fail to sufficiently describe the work supporting the charges. Where an award of attorney fees is appropriate, the party seeking the fees always bears the burden of presenting sufficient evidence from which the trial court can render a decision as to whether the fees are compensable. *Mars v. Priester*, 205 Ill. App. 3d 1060, 1064 (1990). It is incumbent upon the petitioner to present detailed records maintained during the course of the litigation containing facts and computations upon which the charges are predicated. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Story*, 218 Ill. App. 3d 829, 835 (1991). As 900 North Rush identified in its objections to the fee petition, Intermix sought recompense for services totaling $7748.17, for which the work is insufficiently described in a manner that would permit the recovery of the charged fees. In its written order on attorney fees, the trial court did not address this objection to fees being awarded. Before this court, Intermix has not persuasively explained why its lackluster descriptions should be excused. For those identified entries, totaling $7748.17, Intermix failed to meet its burden to entitle it to an award of fees and its fee award must be reduced accordingly.

¶ 45    As for 900 North Rush's argument that there was no evidence to demonstrate that the fees charged were customary in the marketplace, Intermix's fee petition sets forth that the billings were generated, and Intermix had agreed to pay those amounts, before it knew whether it would recover attorney fees at the conclusion of the litigation. Moreover, the trial court is entitled to rely upon its own knowledge of the customary fees charged in the jurisdiction in which the court sits. See *First National Bank of Chicago v. Edgeworth*, 94 Ill. App. 3d 873, 885 (1981) ("The matter of fixing attorneys' fees is one of the few areas in which a judge may rely upon the record before him and also upon his own knowledge and experience.").

¶ 46    As for 900 North Rush's argument that Intermix failed to demonstrate any heightened efficiency or a necessity for having two law firms engaged on this case, Intermix's fee petition includes an attestation from counsel that their collaboration was "cooperative, synergistic, effective, and collegial." The trial court looked at the itemized billings and scrutinized the petition for redundancies. In reducing the fees Intermix sought, the trial court expressly addressed "duplicative efforts" in a full section of its written order disposing of the fee petition and stated that it "reviewed and assessed work descriptions on an entry-by-entry basis." The trial court was in the best position to review the entries line by line and approve or reject the expenditures as it saw fit.

¶ 47    Ultimately, attorneys are only allowed to bill, and only allowed to recoup, an amount of attorney fees that is reasonable. It does not matter if a party engages one lawyer or five lawyers, so long as the fees sought and the fees awarded are deemed reasonable by the trial court in its discretion. While the number of attorneys that work on a matter may be probative of the reasonableness of the services and the amounts sought therefore, the number of attorneys working on a case itself does not establish the unreasonableness of a fee petition. Intermix is part of a conglomerate of retail apparel stores with thousands of stores in operation across the country. Intermix is headquartered in California and its California-based attorneys represent it

in real estate matters across the country. 900 North Rush had frequent communications with Gap, Inc.'s counsel during the course of the parties' performance. It was not *per se* unreasonable for Intermix to have involved both local and national counsel in this dispute, and, in fact, 900 North Rush could have easily anticipated such a result when it filed suit.

¶ 48    900 North Rush argues that the amount of fees that Intermix requested is facially unreasonable. In support of this argument, 900 North Rush details the final work product that Intermix was required to produce in the litigation and argues that the time spent and amounts charged for that work are inherently unreasonable. As addressed above, however, the trial court looked at each itemized bill in order to determine what was reasonable. As was its obligation, the trial judge considered factors such as the skill of the attorneys, the difficulty of the case in front of him, the fact that $3 million was at stake, and the fact that the result in the case was a substantial benefit to Intermix. See *Laff*, 63 Ill. App. 3d at 307. The final work product that is filed with the court is not necessarily an absolute indicator of the amount of time and effort that is reasonably necessary for an attorney to spend on a case.

¶ 49    The trial court considered the objections 900 North Rush raises here and rejected them. Moreover, in assessing a fee award, a facial challenge is rarely the appropriate method by which to dispute its reasonableness. As the trial court did here, the better way to analyze a fee petition is to scrutinize whether individual work performed by an attorney was reasonable and whether the time allocated to that individualized work was reasonably necessary. The trial court individually reviewed each of the billing records Intermix attached to its fee petition and determined whether the work and the charges were reasonable and therefore compensable. The trial court made a judgment call and deducted from Intermix's fee request those charges that the court found to be nonrecoverable.

¶ 50    900 North Rush contends that the trial court erred in awarding fees for what 900 North Rush characterizes as excessive charges for document production and for work that was duplicative or was unrelated to the parties' respective claims in this case. 900 North Rush also challenges the costs for which Intermix sought reimbursement. As discussed above, the trial court went through the bills submitted by Intermix in conjunction with its fee petition item by item and accepted those expenses it found to be reasonable and rejected those it found to be unsupported. The trial court's reasoning regarding the charges for document production and the objections to duplicative work appears to be sound, and the record reflects that the trial court carefully considered those objections to the fee petition. 900 North Rush has presented nothing on appeal that would justify finding that the trial court abused its discretion in making those determinations or that would otherwise justify disturbing the trial court's conclusions on those matters. After reviewing the record as a whole, we cannot say that the fees awarded by the trial court in that regard were unreasonable or that the trial court abused its discretion in crafting its award.

¶ 51    However, we do find 900 North Rush's objections to the costs awarded to be persuasive. Intermix requested "costs" for its filing fee in the separate declaratory judgment case, for cab fare to and from court, for unexplained courier charges, for unexplained data hosting, for Westlaw charges, and for one of its attorney's airfare and lodging. Those expenses are not compensable "costs" for a fee award. All of those expenses are properly characterized as overhead expenses that are subsumed into an attorney's billing for services. See *Harris Trust & Savings Bank v. American National Bank & Trust Co. of Chicago*, 230 Ill. App. 3d 591, 599

(1992). Thus, we agree with 900 North Rush that Intermix's cost award must be reduced from $3431.02 to $1275.02.

¶ 52   900 North Rush argues that California attorneys Michael Geibelson and Daniel Allender and their law firm Robins Kaplan, LLP, engaged in the unauthorized practice of law in this case and, thus, that the attorney fees accrued by them are nonrecoverable. As 900 North Rush points out, "[a]bsent leave of court pursuant to Supreme Court Rule 707, an attorney licensed to practice law in another State may not practice law in Illinois." *Fruin v. Northwestern Medical Faculty Foundation, Inc.*, 194 Ill. App. 3d 1061, 1063 (1990). Further, the Attorney Act states that "[n]o person shall receive any compensation directly or indirectly for any legal services other than a regularly licensed attorney." 705 ILCS 205/1 (West 2016). The record demonstrates that Allender never obtained permission under Rule 707 to practice in Illinois and that Geibelson did not gain such permission until he had already performed work for which Intermix seeks reimbursement. 900 North Rush contends that the fees arising from the services performed by these attorneys without permission under Rule 707 should not be shifted to 900 North Rush because the work was performed while the attorneys were engaged in the unauthorized practice of law.

¶ 53   900 North Rush does not provide any authority for the proposition that a party is precluded from recovering fees incurred by its out-of-state licensed attorney for work done outside the state because the attorney did not have permission to practice in Illinois under Rule 707. Applying Illinois law, the United States District Court for the Northern District of Illinois rejected a similar challenge as "genuinely remarkable" and "unwarranted by existing law." *Berthold Types Ltd. v. Adobe Systems, Inc.*, 186 F. Supp. 2d 834, 837-38 (N.D. Ill. 2002). During the time they were acting without permission from the court to practice in Illinois, the record demonstrates that Geibelson and Allender, California attorneys, simply provided legal services to a company headquartered in California and that the work was done in California. The work was then all reviewed, signed, and actually submitted by Illinois attorneys. Neither California attorney signed pleadings. The Illinois attorneys in the case were far from mere figureheads. While the California attorneys no doubt participated in the defense of a case that was proceeding in Illinois, the case was appropriately managed by Illinois attorneys, and the California attorneys were not engaged in the unauthorized practice of law.

¶ 54                                    III. CONCLUSION

¶ 55   Accordingly, we affirm. We reduce the amount of fees and costs awarded by $9904.17 (see *supra* ¶¶ 44, 51).

¶ 56   Affirmed as modified.